IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| DIRECTBUY, INC., <br><br> Plaintiff/Counterdefendant, <br><br> vs. <br><br> BUY DIRECT, LLC, TOM POPE, and ELONA POPE, <br><br> Defendants/Counterplaintiffs. | Case No. 2:15-CV-344-JPK |

**NONPARTY DYLAN ASTLE'S MEMORANDUM IN SUPPORT OF MOTION TO QUASH DEPOSITION SUBPOENA**

Nonparty Dylan Astle ("Mr. Astle"), through his attorneys, Vedder Price P.C., in support of his Motion to Quash Deposition Subpoena (the "Motion") pursuant to Federal Rules of Civil Procedure 45 and 37, states as follows:

**I.     Introduction**

This Court should quash the subpoena for deposition issued to Mr. Astle because it is unduly burdensome and harassing on Mr. Astle, who is not a party to this case and is not an officer or employee of any party to this case. Mr. Astle is an employee of nonparty DirectBuy Home Improvement, Inc., formerly known as CSC Generation, Inc., an entity that cannot, as a matter of law, be held liable for any of Defendants' counterclaims. This Court should quash the subpoena and order Defendants to cease seeking discovery from nonparties against whom Defendants cannot impose liability.

**II.    Background and Plaintiff's Bankruptcy**

This case was initiated on September 8, 2015, when plaintiff DirectBuy, Inc., formerly an Indiana corporation ("Plaintiff"), filed suit against defendants Buy Direct, LLC, Tom Pope, and

Elona Pope (collectively, "Defendants"). Defendants filed their Counterclaim on November 13, 2015, and their Amended Counterclaim on March 9, 2016. (ECF Nos. 20 & 27.)

### A.  Plaintiff's Bankruptcy and Sale

On November 1, 2016, Plaintiff filed for Chapter 11 bankruptcy protection with the United States Bankruptcy Court for the District of Delaware and subsequently notified this Court that all proceedings against Plaintiff were automatically stayed pursuant to the Bankruptcy Code. (ECF No. 29.) The Court then ordered that Defendants' Counterclaims against Plaintiff were stayed by order dated November 3, 2016. (ECF No. 30.)

During Plaintiff's bankruptcy proceedings, CSC Generation, Inc., now known as DirectBuy Home Improvement, Inc., a Delaware corporation ("DB Home Improvement"), reached an agreement to purchase certain assets of Plaintiff out of bankruptcy (the "Sale"). To memorialize the Sale, Plaintiff, DB Home Improvement and certain other entities entered into an Asset Purchase Agreement dated February 10, 2017 (the "APA"). (Exhibit A.) The APA provides that DB Home Improvement did not assume any "Excluded Liabilities" of Plaintiff. "Excluded Liabilities" specifically includes Defendants' Counterclaims against DirectBuy, Inc. (Ex. A, APA § 2.4(e); Schedule 4.3 at No. 5 (identifying the instant *DirectBuy, Inc. v. Buy Direct, LLC, Tom Pope, and Elona Pope* litigation as an Excluded Liability).)

On February 14, 2017, the U.S. Bankruptcy Court entered an order approving and authorizing the APA (the "Sale Order"). (Exhibit B.) In the Sale Order, the U.S. Bankruptcy Court held, among other things, that:

- The court had reviewed the APA and the Debtors'[1] Motion to approve the Sale (*Id.* p. 1);
- The court held a hearing on Debtors' Motion to approve the Sale and considered the arguments of counsel and evidence proffered at the hearing (*Id.* p. 2);

---

[1] Pursuant to the Sale Order, "Debtors" includes Plaintiff DirectBuy, Inc. (Sale Order n.1.)

- DB Home Improvement as Purchaser[2] had acted in compliance with the court's Bidding Procedures, and the APA constituted the highest and best offer for the Purchased Assets (*Id.* ¶ J);

- The APA was negotiated, proposed, and entered into by the Debtors and DB Home Improvement without collusion, in good faith, and from arm's-length bargaining positions (*Id.* ¶ N); and

- DB Home Improvement is a good-faith purchaser acting in good faith pursuant to 11 U.S.C. § 363(m) (*Id.* ¶ O).

The Sale Order provides that DB Home Improvement was acquiring the Purchased Assets (as defined in the APA) "free and clear of all Liens (as defined in the [APA]), obligations, Excluded Liabilities (as defined in the [APA]) and Claims (other than Permitted Liens and the Assumed Liabilities (each as defined in the [APA]))." (*Id.* ¶ P(i).) The Sale Order specifically further holds:

> Under no circumstances shall [DB Home Improvement] be deemed a 'successor' of or to the Debtors or their estates by reason of any theory of law or equity, and, effective upon the Closing Date, and except as expressly set forth in the Purchase Agreement, the Purchaser shall not assume, or be deemed to assume, or in any way be responsible for any Lien, Claim, liability or obligation of any of the Debtors and/or their estates, other than the assumed liabilities and Permitted Liens, with respect to the Purchased Assets or otherwise.

(*Id.* ¶ 15.)

The Sale Order also holds:

> The transfer of the Purchased Assets and the assumption of the Assumed Liabilities . . . to [DB Home Improvement], except as otherwise set forth in the Purchase Agreement, **does not, and will not, subject [DB Home Improvement] to any liability whatsoever, with respect to the operation of the Debtors' business prior to the closing of the Sale Transaction** or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, in any theory of law or equity including any laws affecting antitrust, successor, transferee or vicarious liability. Pursuant to the Purchase Agreement, the Purchaser is not purchasing all of the Debtors' assets in that the **Purchaser is not purchasing any of the Excluded Assets or assuming the Excluded Liabilities. The Sale does not amount to a consolidation, merger or de facto merger of [DB Home**

---

[2] Capitalized terms not defined here shall have the meanings assigned to them in the Sale Order.

-3-

>**Improvement] and the Debtors and/or the Debtors' estates.** There is not substantial continuity between [DB Home Improvement] and the Debtors, and there is no continuity of enterprise between the Debtors and [DB Home Improvement]. DB Home Improvement is not a mere continuation of the Debtors or the Debtors' estates, and the Purchaser does not constitute a successor to the Debtors or the Debtors' estates.

(*Id.* ¶ U (emphasis added).)

In other words, the U.S. Bankruptcy Court ordered that DB Home Improvement cannot, under any circumstances or legal theory, be found to have assumed any liability or risk related to Defendants' Counterclaims in this litigation.

### B. Corporate History of DB Home Improvement

Plaintiff was incorporated in the state of Indiana on April 6, 1981 and was administratively dissolved on October 5, 2017. (*See* Ex. C.) On December 26, 2013, approximately three decades after Plaintiff was incorporated in Indiana, DB Home Improvement was incorporated in Delaware under the name CSC Generation, Inc. f/k/a Ice.com Round 2, Inc. (*See* Ex. D.) DB Home Improvement is authorized to transact business in the state of Indiana as a foreign corporation pursuant to the Certificate of Authority granted by the Indiana Secretary of State dated March 7, 2017.[3] (*See id.*) As of March 17, 2017, DB Home Improvement has been authorized to transact business in the state of Indiana under the assumed name "DirectBuy" as evidenced by the Certificate of Assumed Business Name accepted by the Indiana Secretary of State on March 17, 2017. (*See* Ex. E.) On November 6, 2017, DB Home Improvement filed a Change of Officer certificate naming Mr. Astle as the COO for DB Home Improvement. (*See* Ex. F.)

The corporate history—all of which is publicly available—reflects that DB Home Improvement is an entirely separate corporate entity from Plaintiff; Plaintiff has been

---

[3] The Certificate of Authority was granted to DB Home Improvement while its legal name was CSC Generation, Inc. The Amended Certificate of Authority dated November 6, 2017 and filed with the Indiana Secretary of State reflects the subsequent name change to DB Home Improvement, Inc. (*See* Ex. G.)

administratively dissolved, but DB Home Improvement has an active corporate existence. Defendants incorrectly rely upon the assumed name of "DirectBuy" or "DirectBuy Home Improvement" in their attempt to assign successor liability rather than acknowledging DB Home Improvement's legal name. The Court should reject Defendants' attempt to do so because the Sale Order and controlling law preclude DB Home Improvement from being held liable in this case under any theory.

### III. Procedural History

On February 7, 2019, this Court granted Defendants' Motion to Lift the Stay in this matter and ordered the parties to file a joint status report. (ECF No. 36.) On February 14, 2019, former counsel for Defendants filed a motion to withdraw from representation. (ECF No. 37.) On February 28, 2019, new counsel for Defendants filed a status report stating, among other things, that Defendants "have reason to believe that their claims remain actionable against Direct Buy and/or a third party purchaser of Direct Buy." (ECF No. 39 ¶ 3.) However, by that time, counsel for DB Home Improvement had provided information to Defendants' former and current counsel confirming that Defendants' claims against DB Home Improvement **could not** proceed under any theory. (*See* ECF No. 50, Local Rule 37-1 Certification ¶ 1.) Nevertheless, Defendants continued to seek unnecessary "discovery" from nonparty Mr. Astle.

On or about April 26, 2019, Defendants served a "notice of deposition" on Mr. Astle "c/o DirectBuy," which was improper because Mr. Astle is not an officer of any party to this case. After being informed of that defect, Defendants served a deposition subpoena dated May 17, 2019 on Mr. Astle. (ECF No. 50 at Ex. 7.) That subpoena also is improper and is the subject of this Motion.

**IV.    Summary of Meet-and-Confer Efforts**

Contemporaneously with this Motion, Mr. Astle filed a separate certification of the parties' meet-and-confer efforts pursuant to Local Rule 37-1. (ECF No. 50.)  In short, counsel for Mr. Astle and in-house and outside counsel for DB Home Improvement have on approximately eight different occasions, both through written correspondence and telephone calls, discussed the reasons why Defendants cannot assert any Counterclaims against DB Home Improvement under any theory, and why Defendants' efforts to depose nonparty Mr. Astle is inappropriate, unwarranted, and unduly burdensome.  Counsel for DB Home Improvement provided counsel for Defendants with copies of the Sale Order, which confirms why Defendants cannot assert any Counterclaims against DB Home Improvement based upon alleged conduct that occurred before the Sale.  (ECF No. 50, L.R. 37-1 Certification ¶ 1.)  Defendants' counsel has been unable to provide any cogent, justifiable reason or legal theory for imposing the inconvenience and expense of a deposition on a nonparty who has no unique knowledge of the issues in this litigation and who cannot, as a matter of law, be held liable for any of Defendants' Counterclaims.  Nonetheless, Defendants insist on proceeding with the deposition.

Defendants' intractable pursuit of discovery from Mr. Astle is harassing and abusive.  The Court should quash this subpoena and order Defendants to cease seeking discovery from a nonparty against whom Defendants cannot impose liability.

**V.    Argument**

    **A.    Legal Standard.**

A party or attorney issuing a subpoena is obligated to "take reasonable steps to avoid imposing undue burden or expense" on the subpoena recipient.  FED. R. CIV. P. 45(d)(1).  The court **must** quash a nonparty subpoena if it "subjects a person to undue burden." FED. R. CIV. P. 45(c)(3)(A)(iv).  Courts weigh several factors to determine if a subpoena is unduly burdensome,

including relevance, the issuing party's need for the discovery, and the breadth of the request. *Davis v. Lakeside Motor Co.*, 2012 U.S. Dist. LEXIS 195502, at *3 (N.D. Ind. 2012).  Indeed, while pretrial discovery is in some respects a fishing expedition, Rule 45(c) "'allows the fish to object, and when they do so the fisherman' must justify his pursuit." *Marnocha v. City of Elkhart*, 2018 U.S. Dist. LEXIS 172198, at *8-9 (N.D. Ind. 2018) (quoting *Nw. Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 931 (7th Cir. 2004)).  Defendants have made no effort to justify this pursuit, where there is no legal basis on which Mr. Astle or DB Home Improvement can be subjected to successor liability for Defendants' Counterclaims.  Neither Mr. Astle nor any officer or employee of DB Home Improvement should be forced to incur additional fees and sit for an expensive, burdensome deposition that has no chance of yielding relevant information.

> **B.    The Subpoena Is Unduly Burdensome Because Defendants Have Not Identified Any Information That NonParty Mr. Astle Might Possess That Cannot Be More Easily Obtained through Party Discovery.**

Defendants have not explained, either to the Court or to counsel for Mr. Astle, what information they hope to obtain from Mr. Astle's deposition that cannot be first or more easily obtained through party discovery.  During the parties' meet-and-confer efforts, counsel for DB Home Improvement and counsel for Mr. Astle each inquired as to the specific information that Defendants were seeking to obtain from Mr. Astle.  Counsel for Defendants provided only generalities and equivocal assertions that Mr. Astle possessed relevant information.  In the parties' most recent conversation on May 31, 2019, counsel for Defendants indicated that Mr. Astle's deposition was necessary to find out what Mr. Astle knows about Defendants, what happened between the individual Defendants and the prior owners of Buy Direct, LLC, and Mr. Astle's "knowledge of certain behaviors."  (ECF No. 50 ¶ 7.)  Those vague descriptors are insufficient to justify the burden that a deposition would impose on a nonparty, and in any event they beg the

question of why that same information is not more easily obtained from Defendants and other parties to this litigation.

Indeed, the parties' discussions have been consistent with the vague representations that Defendants have offered to this Court. In their status report filed May 16, 2019, Defendants state that Mr. Astle's deposition is necessary because they "believe Mr. Astle has knowledge of their business that is essential to their proceeding in this case." (ECF No. 45.) Defendants have never explained what that "essential" information is during numerous discussions related to this subpoena, nor is it apparent why a nonparty would have information about *Defendants'* business that is not already in the possession of *Defendants*.

Defendants have therefore failed to justify why nonparty Mr. Astle should be subjected to the burden and expense of a deposition that is entirely unnecessary and untethered to the pending claims and defenses. Defendants may argue that Mr. Astle was the COO of Plaintiff at one time, but that does not justify why the undue burden of his deposition is necessary **now**. Nothing Mr. Astle could testify about will change the fact that Defendants cannot, as a matter of law, impose successor liability on DB Home Improvement, as discussed further below. It would be a waste of time and expense, and impose an undue burden on Mr. Astle, to subject him to a deposition that will yield no useful information. The subpoena should therefore be quashed.

      **C.**     **The Subpoena Is Unduly Burdensome and Harassing Because Mr. Astle and DB Home Improvement Have No Successor Liability Related to Defendants' Counterclaims.**

In addition to the subpoena seeking undefined, irrelevant information from a nonparty in violation of Rule 45, the subpoena fails for the independent reason that Mr. Astle and DB Home Improvement have no successor liability to Defendants for the Counterclaims. Accordingly, there is no justifiable reason for Mr. Astle or DB Home Improvement to incur the expense and burden of a deposition that will not yield any relevant information.

DB Home Improvement[4] purchased certain assets of Plaintiff out of chapter 11 bankruptcy under the terms of the APA.  The APA is governed by New York law.  (APA § 9.6.)  "New York law provides clearly that a corporation that purchases the assets of another corporation is generally not liable for the liabilities of the seller."  *Doktor v. Werner Co.*, 762 F. Supp. 2d 494, 497 (E.D.N.Y. 2011).  "Where the successor corporation purchases the assets of a bankrupt entity, it is appropriate to look to the relevant purchase documents, and to consider the policies of the bankruptcy laws when determining the successor liability issue."  *Id.* at 498.  "An asset purchase agreement that specifically negates facts that might otherwise support successor liability is entitled to enforcement."  *Id.*

Here, this litigation is expressly excluded from the asset sale as an "Excluded Liability." (APA § 2.4, Schedule 4.3.)  The APA provides that DB Home Improvement "will assume and be responsible for the Assumed Liabilities and no other Liabilities."  (APA § 2.3.)  It further enumerates certain "Excluded Liabilities," which expressly includes this litigation.  (APA § 2.4, Schedule 4.3.)  Accordingly, Defendants' Counterclaims were excluded from the asset sale, and Defendants cannot, as a matter of law, impose successor liability upon DB Home Improvement, Mr. Astle, or any other officers or employees of DB Home Improvement for those claims.  *See also Riverside Mktg., LLC v. Signaturecard, Inc.*, 425 F. Supp. 2d 523, 535-36 (S.D.N.Y. 2006) ("When an agreement provides specifically that a purchaser is to assume liability only for certain claims, and the claim at issue is not within an enumerated category, there is no assumption of liability.").  The Sale Order confirms that that no successor liability can be imposed upon DB Home Improvement.  (Ex. B ¶ U.)

---

[4] DB Home Improvement's corporate predecessor, CSC Generation, Inc., was the purchasing entity under the APA.  As explained at page four above, DB Home Improvement—an entirely separate entity from Plaintiff DirectBuy Inc.—operates under the assumed name Direct Buy Home Improvement, Inc., per the publicly available Indiana Secretary of State records attached hereto.

Further, the APA provides that the asset sale is "free and clear of all Liens (other than Permitted Liens)." (Ex. A § 2.1.) Companies are authorized to sell assets free and clear of successor liability pursuant to Section 363 of the Bankruptcy Code. *In re PetroRig I Pte, Ltd.*, 2009 Bankr. LEXIS 5186, at *9 (S.D.N.Y. Bankr. Ct. 2009) "Judicial enforcement of a negotiated 'free and clear' asset sale furthers the policies of the bankruptcy laws which encourages sales that maximize the value of the estate for all creditors." *Doktor*, 762 F. Supp. 2d at 498. Enforcing negotiated "free and clear" asset sales is further encouraged "because without this assurance of finality, purchasers could demand a large discount for investing in a property that is laden with the risk of endless litigation." *Id.*; *see also Douglas v. Stamco*, 363 F. App'x 100, 102 (2d Cir. 2010) ("it is evident that the potential chilling effect of allowing a tort claim subsequent to the [free and clear] sale would run counter to a core aim of the Bankruptcy Code, which is to maximize the value of the assets and thereby maximize potential recovery to the creditors"). Thus, the free and clear nature of the APA is both enforceable and consistent with New York policy related to bankruptcy transactions.

Finally, the Bankruptcy Court evaluated the APA and held that Plaintiff was authorized to enter into the APA and consummate the transactions, including the free-and-clear asset sale, contemplated thereby. (Ex. B ¶ P.) The Sale Order further found that the transaction was not a fraudulent transfer and that DB Home Improvement would not be subject to any successor liability whatsoever. (*Id.* ¶¶ T, U.) "A bankruptcy court's order approving the sale of assets serves to 'enjoin existing claimants' successor liability claims against the purchaser pursuant to section 363(f).'" *Lyons v. Rienzi & Sons, Inc.*, 863 F. Supp. 2d 213, 223 (E.D.N.Y. 2012) (quoting *In re Motors Liquidation Co.*, 428 B.R. 43, 59 (Bankr. S.D.N.Y. 2010)); *see also Faulkner v. Bethlehem Steel/Int'l Steel Grp.*, 2005 U.S. Dist. LEXIS 7501, at *8-10 (N.D. Ind. 2005) (bankruptcy court's

approval of free-and-clear asset sale was sufficient to find that the purchaser "cannot be liable to Faulkner as a successor in interest").

Taken together, the APA and the Sale Order definitively establish that neither DB Home Improvement nor its officers (including Mr. Astle) may be subject to any liabilities or obligations related to Defendants' Counterclaims in this litigation. Subjecting Mr. Astle to a deposition is therefore unduly burdensome and must be prohibited under FED. R. CIV. P. 45(c)(3)(A)(iv).

## VI.   Conclusion

Defendants' deposition subpoena to nonparty Mr. Astle must be quashed because it imposes an undue burden on Mr. Astle. Defendants have been unwilling or unable to explain the information that it seeks from a nonparty or why that same information cannot be more easily obtained through party discovery. Moreover, the plain language of the APA and the Sale Order forecloses any possibility that Defendants may impose successor liability related to their Counterclaims on either Mr. Astle or his current employer.

WHEREFORE, nonparty Dylan Astle respectfully requests that this Court quash Defendants' deposition subpoena, order that Defendants be barred from seeking further third-party discovery from him or DB Home Improvement, award Mr. Astle his reasonable attorneys' fees pursuant to Rule 45(d)(1), and grant all other relief that this Court deems just and proper.

-12-

          Respectfully submitted,

          DYLAN ASTLE

          By:   s/ Elizabeth N. Hall
                One of His Attorneys

Elizabeth N. Hall
Jeanah Park (*pro hac vice* application forthcoming)
Jonathon P. Reinisch (*pro hac vice* application forthcoming)
Vedder Price P.C.
222 North LaSalle Street
Chicago, Illinois 60601
T:  +1 312 609 7500

Dated:  June 18, 2019

## INDEX OF EXHIBITS PURSUANT TO LOCAL RULE 5-4(a)(8)

| EXHIBIT | DESCRIPTION |
|---------|-------------|
| A | Asset Purchase Agreement dated February 10, 2017. |
| B | Order by the United States Bankruptcy Court for the District of Delaware dated February 14, 2017, authorizing the free and clear sale of plaintiff DirectBuy, Inc.'s assets. |
| C | Corporate records of plaintiff DirectBuy, Inc. showing the dates of incorporation and dissolution in the state of Indiana. |
| D | Corporate records showing the incorporation of nonparty DB Home Improvement on December 26, 2013. |
| E | Corporate records showing nonparty DB Home Improvement's authorization to transact business in the state of Indiana under the assumed name DirectBuy as of March 17, 2017. |
| F | Change of Officer certificate dated November 6, 2017, naming Mr. Astle as the COO for DB Home Improvement. |
| G | Amended Certificate of Authority dated November 6, 2017 reflecting CSC Generation, Inc.'s name change to DB Home Improvement, Inc. |

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 18, 2019, I electronically filed the foregoing NONPARTY DYLAN ASTLE'S MEMORANDUM IN SUPPORT OF MOTION TO QUASH DEPOSITION SUBPOENA with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

                                                                    */s/ Elizabeth N. Hall*