# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| DIRECTBUY, INC., <br>     Plaintiff, <br><br> v. <br><br> BUY DIRECT, LLC, TOM POPE, <br> and ELONA POPE, <br>     Defendants. <br><br> BUY DIRECT, LLC, TOM POPE, <br> and ELONA POPE, <br>     Counter Claimants, <br><br> v. <br><br> DIRECTBUY, INC., <br>     Counterclaim Defendant. | CAUSE NO.: 2:15-CV-344-JPK |

## OPINION AND ORDER

This matter is before the Court on Nonparty Dylan Astle's Motion to Quash Deposition Subpoena [DE 48], filed on June 18, 2019. Defendants/Counter Claimants Buy Direct, LLC, Tom Pope, and Elona Pope (collectively referred to as "Defendants" in this Opinion and Order) filed a response on July 3, 2019. Non-party Dylan Astle filed his reply on July 9, 2019. For the following reasons, the Motion to Quash is denied.

Pursuant to Federal Rule of Civil Procedure 45(a)(1)(A)(iii), a party may serve a subpoena commanding a non-party to testify at a deposition and produce designated documents. Rule 45(d)(3)(A)(iv) requires a court to quash or modify a subpoena based on a timely motion if the subpoena subjects a person to an undue burden. Factors considered in determining whether a subpoena is unduly burdensome include non-party status, relevance, the issuing party's need for the discovery, and the breadth of the request. *Uppal v. Rosalind Franklin Univ. of Med. & Sci.*,

124 F. Supp. 3d 811, 813 (N.D. Ill. 2015). The party seeking to quash the subpoena bears the burden of proving that it is unduly burdensome. *Malibu Media, LLC v. John Does 1-14*, 287 F.R.D. 513, 516 (N.D. Ind. 2012).

The broad scope of discovery, which applies to discovery requests sent to non-parties as well as parties, permits a party to seek information

> regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). "The limits and breadth of discovery expressed in Rule 26 are applicable to non-party discovery under Rule 45." *Noble Roman's, Inc. v. Hattenhauer Distrib. Co.*, 314 F.R.D. 304, 307 (S.D. Ind. 2016) (internal citations omitted). When a party seeks discovery that is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive" or is outside of the scope of discovery, the Court must limit discovery. Fed. R. Civ. P. 26(b)(2)(C).

Astle argues that the deposition subpoena should be quashed because it is unduly burdensome and harassing. Astle explains that he is a current employee of non-party DirectBuy Home Improvement, Inc. ("DB Home Improvement"), an entity that purchased certain assets, though not liabilities, of Plaintiff out of bankruptcy. (Mot. to Quash ¶ 3, ECF No. 48). Astle asserts that Defendants have not explained what information they hope to gain from deposing him that cannot be first and more easily obtained through party discovery and that Defendants have provided mere "generalities and equivocal assertions" that he possesses relevant information. (Mem. Supp. Mot. Quash 7, ECF No. 49). Astle further asserts that, because neither he nor DB

Home Improvement have successor liability to Defendants for their counterclaims, there is "no justifiable reason for Mr. Astle or DB Home Improvement to incur the expense and burden of a deposition that will not yield any relevant information." *Id.* at 8.

In response, Defendants argue that Astle's motion is untimely and that he is a fact witness. Defendants assert that "it is well settled" that an individual seeking to quash a subpoena must do so before the return date specified in the subpoena, and that, despite this, Astle filed his Motion to Quash fourteen days after this deadline. (Resp. 1, ECF No. 56).

Defendants further contend that, until all discovery is completed, Astle's argument regarding DB Home Improvement's potential liability or lack thereof is premature. *Id.* 2. Moreover, Defendants state that Astle incorrectly assumes the deposition would be for the purpose of finding such liability, and explain that Astle is a fact witness who may have information regarding "contracts, payment, and conditions imposed upon [Defendants] and the sexual harassment of Elona Pope." *Id.* In support of this contention, Defendants state that Astle was previously employed by Plaintiff—in fact, Astle was, at one time, Plaintiff's Chief Operating Officer—and had "direct relationships" with all Defendants. *Id.* at 2, 6; (Mem. Supp. Mot. Quash 8, ECF No. 49). Additionally, Defendants assert that Astle was "present at meetings and conferences," "participated in telephone conferences and was included in, or a party to, written communications," and that he "is in the unique position of having first hand knowledge and information of the circumstances forming the bases of [Defendants'] claims." (Resp. 4, ECF No. 56).

Defendants further explain that, due to the age of this litigation, they "anticipate that many of Plaintiff's records were destroyed, and, adding further obstacle, Plaintiff's counsel has withdrawn and failed to engage in this action." *Id.* Finally, Defendants note that Astle has not

specified the particular burden that would be imposed by the subpoena, and that they "gave every opportunity and clear communication to Mr. Astle that they would make reasonable accommodations for his schedule." *Id.* at 5.

Astle counters that the Motion to Quash was timely. Astle notes that his counsel conferred with Defendants' counsel multiple times in late May 2019, and that his counsel "confirmed that the deposition would not go forward as scheduled and that Mr. Astle would file a motion to quash." (Reply 2, ECF No. 57). Astle thus argues that, per these communications, "[t]he originally noticed June 4, 2019 date ceased being the 'date for compliance'" prior to its passage. *Id.* at 3.

Astle takes great issue with Defendants' assertion that "nonparty discovery is necessary in this case 'to uncover facts that may support refined theories of liability and recovery.'" *Id.* at 5 (quoting (Resp. 5, ECF No. 56)). Astle asserts that Defendants "never explain what those 'refined theories' entail," but that both he and the Court "can speculate that Defendants are contemplating claims against nonparty DB Home Improvement." *Id.* To this point, Astle once again contends that "DB Home Improvement cannot, under any circumstances or legal theory, be found to have assumed any liability or risk related to Defendants' Counterclaims in this litigation," and that "Defendants' failure to even acknowledge the valid Court order approving the 'free and clear' nature of Plaintiff's asset sale speaks volumes about the inappropriateness of this subpoena." *Id.* (quoting (Mem. Supp. Mot. Quash 4, ECF No. 49)).

Astle again restates his argument that "it is apparent" the purpose of Defendants' subpoena is to "explore potential liability against DB Home Improvement." *Id.* at 7. Astle points to Defendants' statement that "questions of fact and law remain as to whether any claims survived after Plaintiff's bankruptcy cases were dismissed" as support for this contention, and reasserts that "DB Home Improvement cannot be held liable for any of Plaintiff's liabilities under any legal

4

theory or under any circumstances." *Id.* (quoting Resp. 6, ECF No. 56). Astle asserts that "Defendants are attempting to use discovery to fish for and explore other claims against nonparties." *Id.* at 8.

Finally, Astle argues that Defendants have failed to explain what, if any, attempts or efforts have been made to obtain information from Plaintiff, and that Defendants failed to articulate what specific information may have been destroyed. *Id.* at 5-6. Astle contends that Defendants "utterly fail[ed]" to explain what information they believe he might possess, or how his knowledge of the aforementioned "contracts, payment, and conditions" would support Defendants' counterclaims. *Id.* at 6. Astle further asserts that Defendants' reference to sexual harassment is "particularly troubling and demonstrates the inappropriateness of this subpoena," as, while Defendants' counterclaims contain allegations of sexual harassment perpetrated by one party, the counterclaims contain no allegations that Astle was involved in, witnessed, or was present for any of the alleged sexual harassment. *Id.*

As an initial matter, the Court finds that the Motion to Quash was timely. While Federal Rule of Civil Procedure 45(d)(3) does not precisely define what constitutes a timely motion, the District Court for the Southern District of Indiana has helpfully noted the chief interpretations of this provision as follows:

> [S]ome courts have required that a motion to quash be filed within 14 days, *see, e.g., Edin v. Garner Family Enters., Inc.*, No. 1:11-CV-1300, 2012 WL 364088, at *1 (S.D. Ind. Feb. 1, 2012). Other courts have required that a motion to quash be made "at or before the time of compliance." *Cent. States, Se. & Sw. Areas Pension Fund v. GWT 2005 Inc.*, 2009 WL 3255246, at *1 (N.D. Ill. Oct. 6, 2009). Still other courts have determined that the district court has discretion to decide whether a motion to quash is considered timely. *See, e.g., Woodard v. Victory Records, Inc.*, 2014 WL 2118799, at *4 (N.D. Ill. May 21, 2014) (concluding that, "[w]hile the court does not wish to condone a party's failure to challenge a subpoena within the time delineated by the rules," the conduct between the parties indicated that the time for compliance had not yet lapsed).

5

*Castelino v. Rose-Hulman Inst. of Tech.*, No. 217CV00139WTLMJD, 2018 WL 3721391, at *2 (S.D. Ind. Aug. 6, 2018).

The subpoena at issue in this matter specified that Astle's deposition was to take place on June 4, 2019. On May 29, 2019, Astle's counsel notified Defendants' counsel by email that Astle was not available on the June 4 date. Astle represents that on May 31, 2019, his counsel further explained to Defendants' counsel that the deposition would not go forward and that there was a forthcoming motion to quash. Without delving into which interpretation of timely the Court finds most proper, the Court is nonetheless unwilling to find, given the course of conduct between Astle and Defendants, that a motion to quash was untimely when filed fourteen days after a by-then disputable date of compliance.

Turning to the merits, the Court finds that Astle has not met his burden of proving that the subpoena is unduly burdensome. *See Malibu Media, LLC*, 287 F.R.D. at 516. In fact, Astle argues very little regarding the actual burden imposed by the subpoena and instead focuses on his purported lack of relevant information and what he assumes to be the real purpose of Defendant's deposition: a fishing expedition on the liability of DB Home Improvement.

As to relevance, Defendants have satisfactorily argued that Astle may possess information relevant to Defendants' claims against Plaintiff. Defendants explained that Astle may have been present for and/or participated in meetings, telephone conferences, and written communications that pertain to topics germane to Defendants' claims, including the alleged harassment of Elona Pope. The fact that Astle was, at one time, Plaintiff's Chief Operating Officer lends credence to the contention that he may possess information regarding such topics as franchise agreements entered into between the parties, allegations of harassing behavior inflicted upon Elona Pope during a conference, and the so-called Penders program. *See* (Compl., ECF No. 1; Answer, ECF

No. 20; First Am. Countercl., ECF No. 27). Astle may also have information regarding the removal of merchandise from Defendants, an issue raised in both the Plaintiff's Complaint and Defendants' Answer. *See* (Compl., ECF No. 1; Answer, ECF No. 20).

Astle's contention that Defendants have "utterly failed" to explain what information they believe he might possess or explain how his knowledge may support their counterclaims is misguided. It is entirely possible Defendants are not yet sure what information, exactly, Astle may possess, which is precisely why they are seeking to depose him. This is not improper. Rather, one of the primary purposes of a deposition is to discover what an individual may know about a topic. *Lumpkin v. Kononov*, No. 2:12-CV-320, 2013 WL 1343666, at *1 (N.D. Ind. Apr. 3, 2013) ("[T]he purpose of the deposition is to allow the other side to find out what the witness knows about the matter."). Moreover, to the extent Astle believes Defendants must make a detailed accounting of what information they believe he might possess and why such information may be relevant to their claims, he is mistaken. Astle is not responsible for Defendants' trial strategy. Defendants' are not required to divulge every theory of their case and explain why, exactly and precisely, Astle might have specific information pertinent to each of these theories.

Astle's argument regarding the alleged sexual harassment of Elona Pope is similarly misguided. There is little merit to his assertion that Defendants' belief that Astle may have information regarding the harassment is "troubling" and reveals the "inappropriateness" of the subpoena. If Defendants believe Astle may have witnessed the alleged harassment, it is reasonable to expect Defendants to seek information from him on this topic. The fact that Astle is not named in the counterclaims does not preclude Defendants from seeking to determine what relevant information or knowledge he possesses about those events.

Accordingly, it is far from "apparent," as Astle claims, that Defendants' true purpose for the deposition is to explore potential liability against DB Home Improvement. Given Defendants' representations regarding meetings, telephone conferences, and written communications that Astle may have been present for and/or participated in, it seems eminently reasonable to the Court that Astle may have information relevant to Defendants' claims against Plaintiff and that the purpose of the deposition is, in fact, to seek that information. Defendants pursuit of deposing Astle thus appears neither harassing nor futile, as Astle claims in his filings. To the extent Astle is concerned that Defendants may nonetheless attempt to probe into information relevant only to a potential liability claim against DB Home Improvement, he is free to move for a protective order prohibiting such questioning.

Finally, Astle's arguments regarding Defendants' ability to obtain the same information elsewhere are unpersuasive. Defendants adequately explained the basis for their belief that Astle may have first hand knowledge and information regarding the circumstances that form the foundation of Defendants' claims. Defendants further expressed a concern regarding the availability of older records. This is sufficient for the relatively modest burden imposed here: the deposition of a non-party whose former employment put him in a position to have firsthand knowledge of relevant facts.

Defendants are not seeking voluminous records, the collection and review of which would take countless hours, effort, and resources. Rather, they are seeking to depose an individual, albeit one not a party to this action, for a single day less than twenty miles from his home. As far as discovery matters go, this seems a rather minimal burden to bear in light of Defendants' need for relevant information and Astle's potential access to or knowledge of it. Astle has simply not met his burden of proving that the subpoena is unduly burdensome in this circumstance.

## CONCLUSION

Based on the foregoing, the Court hereby **DENIES** Nonparty Dylan Astle's Motion to Quash Deposition Subpoena [DE 48]. The Court **ORDERS** Dylan Astle to appear for a deposition at a time and date agreed upon by Astle and Defendants. The Court notes that Defendants represented they would make reasonable accommodations for Astle's schedule, and the Court expects them to do so.

So ORDERED this 22nd day of August, 2019.

s/ Joshua P. Kolar  
MAGISTRATE JUDGE JOSHUA P. KOLAR  
UNITED STATES DISTRICT COURT