UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| BUY DIRECT, LLC; TOM POPE; and ELONA POPE, | ) ) ) | |
| Counterplaintiffs, | ) ) | Cause No. 2:15-CV-344-JPK |
| v. | ) ) | |
| DIRECTBUY, INC., | ) ) | |
| Counterdefendant. | ) ) | |

## OPINION AND ORDER

Currently before the Court are (1) the Court's sua sponte order directing Counterplaintiffs to advise the Court why the Second Amended Counterclaim [DE 100] should not be stricken, *see* [DE 105, 107]; and (2) Counterplaintiffs' Motion For Leave To File Third Amended Counterclaim ("Third Motion To Amend") [DE 108]. For the reasons that follow, the Court strikes those portions of the Second Amended Counterclaim alleging a claim or claims against Michael Bornhorst, and grants in part Counterplaintiffs' motion for leave to file the proposed Third Amended Counterclaim. Counterplaintiffs may file a revised version of the proposed Third Amended Counterclaim [DE 108-1] omitting any claim(s) against Michael Bornhorst (i.e., Count IV of the proposed Third Amended Counterclaim).

## BACKGROUND

For a more detailed discussion of these proceedings and the underlying facts giving rise to them, the reader is directed to the Court's March 8, 2022 Opinion and Order [DE 99]. For present purposes, the Court begins with the stay that was entered in the case after Counterdefendant DirectBuy, Inc. (hereinafter "Old DirectBuy") declared bankruptcy. As part of the bankruptcy proceedings, Old DirectBuy sold all of its assets to a third-party purchaser. Around the same time,

Old DirectBuy's attorneys withdrew from their representation of Old DirectBuy in this matter, stating that Old DirectBuy had been dissolved by the Indiana Secretary of State and therefore no longer existed to prosecute its claims against Counterplaintiffs. Old DirectBuy's dissolution, however, did not automatically abate or suspend Old DirectBuy's claims against Counterplaintiffs. *See* DE 99 at 7-8 (citing Ind. Code § 23-1-45-5(b)(6)). Nor did it affect Counterplaintiffs' right to pursue their Amended Counterclaim against Old DirectBuy, which had been pending since before the stay had been entered. *Id.* at 8 n.9 (citing Ind. Code § 23-1-45-7(d)). Accordingly, Old DirectBuy's attorneys' motion to withdraw identified Old DirectBuy's Chief Operating Officer as the "last known" contact for Old DirectBuy for purposes of further proceedings in this case. *See* N.D. Ind. L.R. 83-8(c).

Following Old DirectBuy's attorneys withdrawal, the bankruptcy proceedings were dismissed without any discharge of Old DirectBuy's debt, and, once that happened, the Court lifted the stay in this case. Counterplaintiffs then initiated discovery against Old DirectBuy's former Chief Operating Officer, from which they learned that a third party entity called DirectBuy Home Improvement, Inc. was in possession of Old DirectBuy's records. Counterplaintiffs also learned that Old DirectBuy's assets had been sold to a company named CSC Generation, Inc. ("CSI"), which changed its name to Direct Buy Home Improvement, Inc. ("D.B.H.I."), and that a third entity, DirectBuy Operations, LLC, was doing business in Indiana under the name of "DirectBuy."

With this information in hand, Counterplaintiffs sought leave to file a Second Amended Counterclaim. Their motion for leave to amend, however, did not attach a proposed Second Amended Counterclaim as required by N.D. Ind. L.R. 15-1(a). Nor did it "state with particularity the grounds for seeking" leave to amend, as required by Fed. R. Civ. P. 7(b)(1)(B). Instead, the motion merely stated that Counterplaintiffs "incorporat[ed] by reference [their] Memorandum in

Support of this Motion." [DE 90]. Counterplaintiffs' Memorandum contained a section titled "Allegations To Be Included In Second Amended Counterclaim," which began by stating that "Counterplaintiffs now have a factual basis to allege the CSC, D.B.H.I., and DirectBuy Operations, LLC [collectively "the New DirectBuy Entities"] are liable as successors of [Old DirectBuy] under Indiana law." [DE 91 at 3]. The "Allegations To Be Included" section then set forth three legal theories under Indiana law for holding the New DirectBuy Entities liable for the counterclaims as successors to Old DirectBuy. [*Id.* at 3-4]. This was followed by an "Argument" section, which further discussed the three legal theories supporting successor liability counterclaims against the New DirectBuy Entities, as well as the reasons, according to Counterplaintiffs, why successor liability counterclaims were not prohibited by the United States Bankruptcy Code. [*Id.* at 4-13]. The New DirectBuy Entities, who had entered appearances as nonparties to oppose Counterplaintiffs' discovery efforts against them, opposed allowing the amendment. They argued that Counterplaintiffs failed to comply with N.D. Ind. L.R. 15-1(a), and, further, that the proposed new successor liability counterclaims would be futile because they were barred by the asset purchase agreement between CSC and Old DirectBuy, as well as by applicable provisions of the Bankruptcy Code. [DE 97]. Counterplaintiffs responded to these arguments in a reply brief by asserting that their failure to attach a proposed amended pleading was "not grounds to deny the motion" to amend pursuant to the quoted terms of the local rule [DE 98 at 1 (citing N.D. Ind. L.R. 15-1(c)), and because "the Court [could] rule on the issue of whether Counterplaintiffs should be allowed to further amend their Counterclaim to add claims of successor liability based on the information before it." [DE 98 at 1]. Counterplaintiffs' reply brief also refuted the New DirectBuy Entities' arguments regarding the futility of the successor liability claims.

3

The Court essentially agreed with Counterplaintiffs' arguments [DE 99 at 9-12], and granted the motion to amend. The *only* potentially new claims discussed in the Court's lengthy and exhaustive March 8, 2022 opinion and order granting leave to amend were Counterplaintiffs' successor liability claims against the New DirectBuy Entities. *See* [DE 99]. Following the Court's grant of leave to amend, however, Counterplaintiffs filed a Second Amended Counterclaim [DE 100] that asserted not only the successor liability claims addressed in the Court's March 8, 2022 opinion and order but also a new counterclaim or counterclaims against Michael Bornhorst, the former Chief Executive Officer of Old DirectBuy.

While the claims against Bornhorst in the Second Amended Counterclaim were new, the allegations on which those claims were based are not—those allegations were also included in the First Amended Counterclaim. Specifically, Counterplaintiffs alleged in the First Amended Counterclaim that Bornhorst sexually harassed Counterplaintiff Elona Pope during a conference held in Dallas, Texas on June 7-9, 2015, and also committed acts of "financial harassment" over a period of time prior to Old DirectBuy's August 25, 2015 termination of Counterplaintiffs' franchise agreement. *See* [DE 27 ¶¶ 33-41, ¶¶ 42-55, ¶ 66]. The same allegations are repeated in the Second Amended Counterclaim. *See* [DE 100 ¶¶ 43-51, ¶¶ 52-65, ¶ 76]. Moreover, both the First Amendment Counterclaim and the Second Amended Counterclaim include a claim for intentional infliction of emotional distress [IIED] based on Bornhorst's alleged sexual harassment. *See* [DE 27 ¶¶ 96-99; DE 100 ¶¶ 106-109]. The only difference between the allegations concerning Bornhorst in the First and Second Amended Counterclaims is that the First Amended Counterclaim only named Old DirectBuy as a defendant in Counterplaintiffs' IIED claim, while the Second Amended Counterclaim alleges claims generally against Bornhorst, including, presumably, the IIED claim based on Bornhorst's alleged sexual harassment of Elona Pope.

Following Counterplaintiffs' filing of the Second Amended Counterclaim, the Court sua sponte entered an order scheduling a telephonic hearing to discuss "whether the claims alleged against Michael Bornhorst, named as a defendant for the first time in the Second Amended Counterclaim, fall within the amendments allowed by the Court's March 8, 2022 Opinion and Order [DE 99], and, if they do not, whether those claims should be stricken pending the filing of a motion to amend in which Counterclaimants address their tardiness in failing to seek leave to amend to add said claims within the deadline set forth in the previous scheduling order [DE 23]." [DE 105]. At the scheduled telephonic hearing, Counterplaintiffs stated, contrary to the Court's previous understanding, that their motion to amend had included a request to add a counterclaim against Bornhorst that was separate and distinct from the successor liability claims against the New DirectBuy Entities. Counsel for Counterplaintiffs admitted that the "bulk" of the legal analysis on the motion for leave to file a second amended counterclaim pertained to the successor liability claims against the New DirectBuy Entities, but further explained that, during the limited discovery that had taken place since the stay was lifted, information also was learned that would allow for an individual claim against Bornhorst in addition to the successor liability claims against the New DirectBuy Entities.

In response to these arguments, the Court noted that any misunderstanding regarding whether Counterplaintiffs had requested leave to add a new claim against Bornhorst individually in addition to their successor liability claims could have been avoided had Counterplaintiffs complied with the local rule by filing a proposed Second Amended Complaint with their motion to amend. But for reasons explained in the Court's March 8, 2022 opinion and order, the Court has excused Counterplaintiffs' omission of a proposed Second Amended Counterclaim in the interest of moving the case forward. Nevertheless, even apart from the issue of whether leave had been

5

granted to add counterclaims against Bornhorst, the Court also advised Counterplaintiffs there were at least two other problems with the new claim(s) against Bornhorst in the Second Amended Counterclaim. The first problem was that the Second Amended Counterclaim relied on group allegations against "Counterdefendants" collectively, a pleading technique that had the effect of suggesting that Counterplaintiffs were seeking to sue Bornhorst for claims that, given the alleged facts, clearly did not apply to him. The second problem was that it appeared from the face of the Second Amended Counterclaim that any newly asserted counterclaims against Bornhorst would be barred by the statute of limitations. Thus, the Court granted Counterplaintiffs leave to file a document advising the Court why the Second Amended Counterclaim should stand as filed. [DE 107]. Additionally the Court gave Counterplaintiffs the option of filing another motion for leave to amend in which they provided appropriate legal argument for why the Court should allow Counterplaintiffs to allege a new counterclaim or counterclaims against Bornhorst.

Following the telephonic status conference, Counterplaintiffs filed the Third Motion To Amend, to which they have attached a proposed Third Amended Counterclaim [DE 108-1]. Counterplaintiffs argue in their Third Motion To Amend that the proposed Third Amended Counterclaim "more clearly state[s] their claims and the parties more precisely." [DE 108 at 2]. That statement is accurate insofar as the proposed Third Amended Counterclaim clarifies the group allegations in the Second Amended Counterclaim by specifically naming Bornhorst as a defendant only in Count IV, which alleges an IIED claim based on Bornhorst's alleged sexual harassment of Counterplaintiff Elona Pope during the June 7-9, 2015 conference in Dallas. A separate count of the proposed Third Amended Counterclaim—Count V—realleges the IIED claim based on Bornhorst's conduct but names Old DirectBuy and the New DirectBuy Entities as "jointly and

6

severally" liable for Elona Pope's emotional suffering from Bornhorst's alleged harassment. *See* [DE 108-1 at 24-26].

With respect to any of the other concerns about the new claim(s) against Bornhorst raised by the Court during the telephonic status conference, Counterplaintiffs' Third Motion To Amend contains only the following statements:

> 7.    The limited discovery completed to date has revealed that the [New DirectBuy Entities] … will likely argue that MICHAEL BORNHORST acted outside the scope of his employment due to the nature of BORNHORST's alleged behavior and the fact that such behavior was allegedly prohibited by the [New DirectBuy Entities'] Human Resources manual and or other policies.

> 8.    Counterplaintiffs believe MICHAEL BORNHORST had actual notice of the allegations against him at the time this action was originally filed, had an opportunity to investigate those allegations, and that he will not be prejudiced by his addition as a Counterdefendant at this time.

[DE 108 at 2].

## DISCUSSION

### A.    WHETHER THE NEW CLAIM(S) AGAINST BORNHORST IN THE SECOND AMENDED COUNTERCLAIM WERE FILED WITHOUT LEAVE OF COURT

Federal Rule of Civil Procedure 12(f) allows a court to strike from a pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. Proc. 12(f). Pursuant to this rule, "courts have stricken an amended complaint where the amendments exceeded [the] court's grant of leave to amend." *Norfolk S. Ry. Co. v. Tobergte*, Civil No. 5:18-207-KKC-MAS, 2022 WL 761469, at *2 (E.D. Ky. Mar. 11, 2022) (citing cases); *see also Urioste v. Corizon & Centurion Health Care Providers*, No. 1:16-CV-755-JCH-KRS, 2021 WL 1811694, at *7 (D.N.M. May 6, 2021) ("Federal courts will regularly strike allegations, claims, and even entire amended pleadings under Federal Rule of Civil Procedure 12(f) where that

7

material exceeds the scope of an amendment permitted by the court." (collecting cases)), *report and recommendation adopted*, 2021 WL 2634643 (D.N.M. June 25, 20921); *Crane v. Yarborough*, No. CV 05-8534 DSF(JC), 2012 WL 1067965, at *13 n.14 (C.D. Cal. Feb. 6, 2012) (stating that "it would be appropriate to strike plaintiff's First Amendment retaliation claim because the addition of such claim which has been raised for the first time in the Second Amended Complaint exceeds the scope of the leave to amend granted in the November 30 Order, [and] plaintiff has not otherwise sought or been afforded leave to add such new claim or theory of liability" (citing cases)), *report and recommendation adopted*, 2012 WL 1067956 (C.D. Cal. Mar. 29, 2012).

During the telephonic hearing, Counterplaintiffs asserted that their motion seeking leave to file a second amended counterclaim had in fact requested leave to add a new claim against Bornhorst that was independent of Counterplaintiffs' successor liability claims. Apparently, Counterplaintiffs have in mind the following two sentences in their memorandum in support of their previous motion to amend:

> 7.      Counterplaintiff Elona Pope endured sexual harassment by [Bornhorst], the then CEO of [Old DirectBuy].
>
> 8.      From the limited discovery Counterplaintiffs have been allowed to conduct they learned that the [Old DirectBuy] handbook prohibited such conduct and [Bornhorst] was acting outside the scope of his employment when he sexually harassed Mrs. Pope.

[DE 91 at 2]. These sentences appear in the "Facts" section of Counterplaintiffs' memorandum. No further mention of them is made in the "Allegations To Be Included In Second Amended Counterclaim" or "Argument" sections that follow the "Facts" section. In other words, Counterplaintiffs never connected the asserted newly learned facts concerning Bornhorst to any new claim they sought to allege. As previously discussed, the only legal issues addressed in the briefing on the second motion to amend was the successor liability issue related to the New

DirectBuy Entities. And in their reply brief, Counterplaintiffs *specifically* argued that they did not need to submit a proposed Second Amended Counterclaim with their motion to amend because "the Court can rule on the issue of whether Counterplaintiffs should be allowed to further amend their Counterclaim *to add claims of successor liability* based on the information before it." [DE 96 at 1 (emphasis added)]. Further, although the concluding paragraph of Counterplaintiffs' memorandum does name Bornhorst as a party Counterplaintiffs were seeking "to add" in their proposed Second Amended Counterclaim, Bornhorst's name is specifically tied in the concluding paragraph to Counterplaintiffs' *successor liability claims only*.[1]

In any event, even if Counterplaintiffs believed they had requested to add a non-successor liability counterclaim against Bornhorst, it is clear that the Court was not aware of that request. The only new counterclaims discussed in the Court's opinion and order granting leave to amend were the successor liability claims against the New DirectBuy Entities. The Court finds that neither the brief reference in the "Facts" to Old DirectBuy's handbook and Bornhorst acting outside the scope of his employment, nor the concluding paragraph of Counterplaintiffs' memorandum naming Bornhorst as a new party to be added in connection with Counterplaintiffs' successor liability claims, put the Court on notice of any request to add a non-successor liability claim against Bornhorst. The Court further concludes that its March 8, 2022 opinion and order granting leave to file a Second Amended Counterclaim did not consider and thus did not rule on such a request. "Striking [Counterplaintiffs'] unauthorized additions under Rule 12(f) 'is appropriate here because

---

[1] *See* [DE 91 at 13-14 ("Counterplaintiffs have a valid basis to make *successor liability claims against MICHAEL BORNHORST*, CSC GENERATION, INC. [and the other New DirectBuy entities] …. WHEREFORE, …. Counterplaintiffs request the Court grant Counterplaintiffs leave to further amend Counterclaim to add parties MICHAEL BORNHORST, CSC GENERATION, INC., [and the other New DirectBuy entities] *and other derivative or related entities* operating under or have [sic] an interest in the brand name and/or trade named DIRECTBUY ….") (emphasis added); *see also* DE 96 (Reply Brief) at 5-6 (same)].

9

to hold otherwise would be to essentially ignore Fed. R. Civ. P.15(a) and the requirement that a plaintiff seek leave before amending his complaint.'" *Urioste*, 2021 WL 1811694, at *7 (quoting *U.F.C.W. Local 56 Health & Welfare Fund v. J.D.'s Mkt.*, 240 F.R.D. 149, 154 (D.N.J. 2007)). Therefore, to the extent that the allegations in Counterplaintiffs' Second Amended Counterclaim [DE 100] differ from those in their First Amended Counterclaim [DE 27] in any way other than adding successor liability claims against the New DirectBuy Entities, the Court **STRIKES** those allegations pursuant to Rule 12(f).

### B. WHETHER THE THIRD MOTION TO AMEND PROVIDES ADEQUATE GROUNDS FOR GRANTING LEAVE TO ADD A NEW IIED CLAIM AGAINST BORNHORST

Rule 15 of the Federal Rules of Civil Procedure governs when and how a party may move to file an amended pleading, and provides that the Court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Also relevant here, however is Rule 16 of the Federal Rules of Civil Procedure, which requires a district court to issue a scheduling order as soon as practicable, which order is required to include a deadline for filing amended pleadings. *See* Fed. R. Civ. P. 16(b)(2), (b)(3)(A). Rule 16 further states that "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4); *see Trustmark Ins. Co v. Gen. Cologne Life Re of Am.*, 424 F.3d 542, 553 (7th Cir. 2005) ("To amend a pleading after the expiration of the trial court's Scheduling Order deadline to amend pleadings, the party must show 'good cause.'").

A two-step analysis applies in evaluating a motion for leave to amend a pleading after the expiration of the scheduling order deadline for amendments to the pleadings. First, the Court asks whether the moving party has shown "good cause." *Trustmark Ins. Co.,* 424 F.3d at 553 (quoting Fed. R. Civ. P. 16(b)(4)). If the good cause standard is met, the Court then applies the Rule 15(a)(2) standard for amendments of allowing leave to amend "freely … when justice so requires," Fed. R.

Civ. P. 15(a)(2). *See Alioto v. Town of Lisbon*, 651 F.3d 715, 719 (7th Cir. 2011) (stating that "[t]he two-step process is consistent with nearly every one of our sister circuits (and out of step with none)"); *see, e.g., GJMS, LLC v. Hamstra Builders, Inc.*, No. 2:18-CV-135-JTM-JEM, 2021 WL 4932857, at *1 (N.D. Ind. Oct. 21, 2021) ("When a party moves to amend its complaint after the amendment deadline set in a Rule 16 order, the Court first considers whether to extend the deadline under the heightened good-cause standard of Rule 16(b)(4) before considering whether the requirements of Rule 15(a)(2) were satisfied." (internal quotation marks and citation omitted)); *Tschantz v. McCann*, 160 F.R.D. 568, 571 (N.D. Ind. 1995) ("[A] party seeking to amend a pleading after the date specified in a scheduling order must first show 'good cause' for the amendment under Rule 16(b), then, if good cause be shown, the party must demonstrate that the amendment was proper under Rule 15.").[2]

### 1.   RULE 16(b)(4)

"Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking amendment.'" *Trustmark Ins. Co.,* 424 F.3d at 553 (quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)); *see also Alioto,* 651 F.3d at 720 ("In making a Rule 16(b) good–cause determination, the primary consideration for district courts is the diligence of the party

---

[2] Because Counterplaintiffs have sought leave to extend the scheduling order deadline after that deadline already has passed, the excusable neglect standard in Fed. R. Civ. P. 6(b)(1) also applies. The Third Motion to Amend suggests that Counterplaintiffs' tardiness should be excused because Bornhorst would not be prejudiced. "Lack of prejudice … is often used as a reason to excuse neglect, but even if [the Court] assume[s] that [Bornhorst] suffered no prejudice, it 'will not suffice if no excuse at all is offered or if the excuse is so threadbare as to make the neglect inexplicable.'" *Bowman v. Korte*, 962 F.3d 995, 998 (7th Cir. 2020) (quoting *United States v. McLaughlin*, 470 F.3d 698, 700–01 (7th Cir. 2006)). "The word 'excusable' would be read out of the rule if inexcusable neglect were transmuted into excusable neglect by a mere absence of harm." *Prizevoits v. Ind. Bell Tel. Co.*, 76 F.3d 132, 134 (7th Cir. 1996). In any event, because, as discussed above, Counterplaintiffs cannot show the required good cause for an extension of the amendments deadline, the Court need not consider further whether they have provided an explanation for their tardiness that satisfies the excusable neglect standard.

seeking amendment."). Here, a scheduling order was entered on December 1, 2015 establishing a deadline of February 15, 2016 for amendments to the pleadings. [DE 23]. That deadline had already expired when, on November 3, 2016, the Court entered a stay of the case as a result of Old DirectBuy's bankruptcy filing. [DE 30].

The reason Counterplaintiffs give for not having sought to amend their pleading to allege an IIED claim against Bornhorst before the February 15, 2016 deadline expired is that they did not learn until the post-bankruptcy discovery in these proceedings that the Human Resources manual and/or other written policies of Old DirectBuy prohibited sexual harassment. Although they offer no further explanation, presumably Counterplaintiffs' argument is that, until they learned about the contents of the Human Resources manual, they were not aware of the possibility that Old DirectBuy (or the New DirectBuy Entities as alleged successor entities) would defend against their IIED claim by arguing that Old DirectBuy was not liable for Bornhorst's alleged sexual harassment because he was acting outside the scope of his employment. The Court recognizes that Counterplaintiffs' allegations, if true, suggest atrocious conduct by Bornhorst, and, further, that "[t]he Federal Rules of Civil Procedure harbor a strong preference for decisions based on the merits rather than on technicalities." *Fifth Third Bank v. Double Tree Lake Estates, LLC*, No. 2:11-CV-0233-PPS-PRC, 2014 WL 3659780, at *5 (N.D. Ind. July 23, 2014) (citing *Foman v. Davis,* 371 U.S. 178, 181 (1962)). But the Court is constrained to conclude that the reason Counterplaintiffs give for not having sued Bornhorst sooner for the alleged sexual harassment simply cannot be characterized as good cause for their tardiness.

Whether Bornhorst was acting within or outside the scope of his employment relates to whether Counterplaintiffs can state a cognizable claim for relief *against Old DirectBuy*; it has nothing to do with whether Counterplaintiffs can state a cognizable claim for relief against

Bornhorst himself. Counterplaintiffs suggested otherwise during the telephonic status conference when they stated that they recently learned facts that would allow for an individual claim against Bornhorst. But Bornhorst's individual liability for his own conduct did not turn on the facts newly learned in discovery regarding Old DirectBuy's Human Resources manual. Regardless of whether Old DirectBuy can be held vicariously liable for the torts committed by its employee, the employee himself is always subject to individual liability for his own torts. Thus, the asserted newly learned fact that Counterplaintiffs might not have a legal right to hold Bornhorst's employer jointly and severally liable with Bornhorst for Bornhorst's tortious conduct cannot excuse Counterplaintiffs from having failed to assert their tort claim against Bornhorst, the alleged tortfeasor, within the period required by the scheduling order.

### 2.   RULE 15(a)(2)

Because Counterplaintiffs have not satisfied the good cause standard of Rule 16(b)(4), the Court need not consider whether leave to amend should be granted under Rule 15(a)(2). Nevertheless, even if the Court were to go on to address Rule15(a)(2), it is not at all clear that leave to amend would be justified for reasons similar to those already discussed in addressing the good cause standard for amending the scheduling order.[3]

To begin with, although "[t]he court should freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), "district courts have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile." *Arreola v. Godinez*, 546

---

[3] Some courts have said that, "[t]o the extent a proposed amendment would add new parties, the motion is technically governed by Rule 21, which provides that the court may at any time, on just terms, add or drop a party, rather than Rule 15(a). However, the same standard of liberality applies under either Rule." *Garcia v. Pancho Villa's of Huntington Vill., Inc.,* 268 F.R.D. 160, 164–65 (E.D.N.Y. 2010) (internal quotation marks and citations omitted)).

F.3d 788, 796 (7th Cir. 2008). An amendment is futile when the proposed amendment "could not survive a second motion to dismiss." *Crestview Vill. Aparts. v. U.S. Dep't of Hous. & Urban Dev.*, 383 F.3d 552, 558 (7th Cir. 2004) (internal quotation marks and citation omitted). In this way, the "standard is the same standard of legal sufficiency that applies under Rule 12(b)(6)." *Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1085 (7th Cir. 1997). Under Rule 12(b)(6), a district court can dismiss a complaint based on a statute of limitations affirmative defense where "it has before it everything needed in order to be able to rule on the defense." *Edwards v. Johnson*, 198 F. Supp. 3d 874, 878 (N.D. Ill. 2016) (internal quotation marks and citation omitted)); *see Logan v. Wilkins*, 644 F.3d 577, 582 (7th Cir. 2011) ("While a statute of limitations defense is not normally part of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), when the allegations of the complaint reveal that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim.").

Moreover, a Court may consider the statute of limitations in deciding whether a proposed amendment to add a new defendant would be futile, even though the statute of limitations "is a personal privilege," *Wagner v. Fawcett Publ'ns*, 307 F.2d 409, 412 (7th Cir. 1962), of a defendant who is not yet before the Court. As one district court explained:

> The statute of limitations is regarded as a personal privilege and may be waived by one entitled to rely on it. However, the district court may deny a motion to amend based on a legal conclusion that the proposed amendment would be futile. Futility is a valid objection to a motion to amend. Though the statute of limitations generally would be [the newly named defendants'] to assert or waive, the Court is not necessarily precluded from considering whether it would be futile to allow an amendment to a complaint that adds new defendants because that amendment would not survive a motion to dismiss based upon a statute of limitations defense asserted by those new defendants.

*Carter v. Great Am. Grp. WF, LLC*, No. 3:11-0794, 2012 WL 3286048, at *2 (M.D. Tenn. July 23, 2012) (internal quotation marks and citations omitted), *report and recommendation adopted*

14

*sub nom. Carter v. Movie Gallery US, LLC*, No. 3-11-0794, 2012 WL 3332409 (M.D. Tenn. Aug. 10, 2012).[4]

Thus, while the issues of whether to allow an amendment under Rule 15 and whether a newly asserted claim is barred by the statute of limitations "are analytically distinct," "courts are permitted to combine th[ose] question[s]." *Mullin v. Balicki*, 875 F.3d 140, 158 (3d Cir. 2017); *see Joseph v. Elan Motorsports Techs. Racing Corp.*, 638 F.3d 555, 559 (7th Cir. 2011) (explaining that technically the correct procedure would be to allow the amendment and then render judgment for the defendant if the new claim is barred by the statute of limitations, but acknowledging that "it is more common, though slightly irregular, for a district court simply to deny leave to amend" (quoting *Slayton v. Am. Express Co.*, 460 F.3d 215, 226 n. 11 (2d Cir. 2006), and citing *Hall v. Norfolk S. Ry.*, 469 F.3d 590, 592 (7th Cir. 2006), and *Woods v. Ind. Univ.–Purdue Univ.*, 996 F.2d 880, 882 (7th Cir. 1993))); *see also Miller v. Panther II Transp., Inc.*, No. 1:17-CV-04149-JMS-TAB, 2018 WL 2197723, at *3 (S.D. Ind. May 14, 2018) (rejecting the plaintiff's "attempt[] to delay resolving the [statute of limitations] issue by arguing it is a separate inquiry from whether

---

[4] *See also Manier v. Dalpra,* No. 3:20-CV-329-MAB, 2022 WL 17752275, at *2 and n.1 (S.D. Ill. Oct. 14, 2022) (citing, *inter alia*, *Rodriguez v. United States*, 286 F.3d 972, 980 (7th Cir. 2002) ("A district court may properly deny a motion to amend as futile if the proposed amendment would be barred by the statute of limitations." (citing *King v. One Unknown Fed. Corr. Officer*, 201 F.3d 910, 914 (7th Cir. 2000) (holding an amendment would be futile because plaintiff had not satisfied relation back requirements and therefore amendment would be barred by statute of limitations))); *Ashford v. Zma*, No. 18 CV 50312, 2020 WL 2041324, at *2 (N.D. Ill. Apr. 28, 2020) (citing, *inter alia*, *Johnson v. Dossey*, 515 F.3d 778, 780 (7th Cir. 2008) ("A district court need not allow the filing of an amended complaint, even when no responsive pleading has been filed, if it is clear that the proposed amended complaint would be deficient and would not survive a motion to dismiss.")); *Addison v. Reitman Blacktop, Inc.*, 283 F.R.D. 74, 81 (E.D.N.Y. 2011) ("A proposed amendment to add defendants may be considered futile if the claims sought to be added are barred by the relevant statute of limitations." (internal quotations and citation omitted)); *Gilmore v. Gilmore*, No. 09 Civ. 6230(WHP), 2010 WL 4910211, at *2 (S.D.N.Y. Nov. 15, 2010) ("A court does not have to wait for a motion to dismiss, and waste judicial time and resources, but may instead deny a motion to amend to add time-barred claims as futile." (internal quotation omitted)).

to permit him to amend the complaint," stating that the Seventh Circuit's opinion in *Joseph* "does not mandate such formulaic redundancy").

The question for the Court in considering the futility of Counterplaintiffs' proposed amendment to add an IIED counterclaim against Bornhorst is whether there is "a conceivable set of facts, consistent with the [proposed Third Amended Counterclaim], that would defeat a statute of limitations defense." *Sidney Hillman Health Ctr. Of Rochester v. Abbott Labs., Inc.*, 782 F.3d 922, 928 (7th Cir. 2015); *see, e.g., Ousley v. CG Consulting, LLC*, 339 F.R.D. 455, 461 (S.D. Ohio 2021) ("[A]t this stage, the Court's role is to evaluate only whether the futility of an amendment is so obvious that it should be disallowed." (internal quotation marks and citation omitted)). IIED claims fall under Indiana's two-year statute of limitations. *Todd v. Lake Cnty. Sheriff's Dep't*, No. 2:18-cv-314, 2013 WL 2156470, at *3 (N.D. Ind. May 17, 2013).[5] The alleged harassment on which Counterplaintiffs' IIED claim is based occurred in June 2015. Counterplaintiffs first asserted an IIED claim against Bornhorst almost seven years later. Under Indiana law, a "cause of action for a tort claim accrues and the statute of limitations beings to run 'when the plaintiff knew

---

[5] Regardless of whether Counterplaintiffs' newly alleged IIED claim against Bornhorst is governed by Texas or Indiana law, *see* [DE 99 at 18-20 (discussing choice of law applicable to Counterplaintiffs' successor liability claims)], the statute of limitations for that claim is determined by looking to Indiana law. *See 1st Source Bank v. Vill. of Stevensville*, No. 3:11-CV-205-TLS, 2012 WL 2308647, at *3 (N.D. Ind. June 18, 2012) (noting that a federal court sitting in diversity jurisdiction applies the choice of law rules of the forum state, and that, "[b]ecause in Indiana statutes of limitations are procedural in nature, Indiana choice-of-law rules state that the statute of limitations of the forum state, Indiana, will apply" (quoting *Autocephalous Greek–Orthodox Church of Cyprus v. Goldberg & Feldman Fine Arts, Inc*., 717 F. Supp. 1374, 1385 (S.D. Ind. 1989) (citations omitted), *aff'd*, 917 F.2d 278 (7th Cir. 1990))); *see also Lehman Bros. Holdings, Inc. v. Laureate Realty Servs., Inc*., No. 1:04–CV–1432–RLY–TAB, 2007 WL 2904591, at *10 (S.D. Ind. Sept. 28, 2007) ("[F]ederal courts sitting in diversity in Indiana routinely apply Indiana's statute of limitations, even where, as here, another stat[e]'s substantive law governs the underlying claims at issue."); *Miller v. Javitch, Block & Rathbone, LLP*, 397 F. Supp. 2d 991, 1002 (N.D. Ind. 2005) ("[U]nder Indiana law, statutes of limitation are procedural, rather than substantive, and are not subject to parties' choice of law disputes.").

or, in the exercise of reasonable diligence, could have discovered that an injury had been sustained as a result of the tortious act of another.'" *Pack v. Mast*, No. 3:19-CV-501-PPS-MGG, 2020 WL 2041756, at *2 (N.D. Ind. Apr. 28, 2020) (quoting *Wehlin v. Citizens Nat'l Bank*, 586 N.E.2d 840, 843 (Ind. 1992)). Mrs. Pope knew of her emotional distress injuries at the time of the alleged harassment. Accordingly, on the face of the newly alleged counterclaim, the IIED claim against Bornhorst would appear to be barred by the statute of limitations *unless* it relates back to the filing of Counterplaintiffs' original counterclaim on November 12, 2015, *Rodriguez v. McCloughen*, 49 F.4th 1120, 1121 (7th Cir. 2022) ("A plaintiff may be able to replace or add defendants after the period of limitations has run by using the relation-back doctrine"); or the equitable doctrine of either tolling or estoppel applies, *Williams v. Sims*, 390 F.3d 958, 959 (7th Cir. 2004) ("The general rule is that a statute of limitations may be tolled—that is, arrested—on the basis of one or the other of two common law doctrines: equitable estoppel and equitable tolling.").

### *(a)    Relation Back*

Relation back of amendments is procedural and, in federal court, governed by Federal Rule of Civil Procedure 15(c)(1). *See Johnson*, 2022 WL 17337953, at *8. That rule provides as follows:

> (1)    ***When an Amendment Relates Back.*** An amendment to a pleading relates back to the date of the original pleading when:
>
> > (A)    the law that provides the applicable statute of limitations allows relation back;
> >
> > (B)    the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out––or attempted to be set out—in the original pleading; or
> >
> > (C)    the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

> (i)     received such notice of the action that
>         it will not be prejudiced in defending
>         on the merits; and
>
> (ii)    knew or should have known that the
>         action would have been brought
>         against it, but for a mistake
>         concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1).

Under Rule 15(c)(1), "an amended complaint that seeks to 'change the party' being sued relates back to the timely pleading if it satisfies the requirements of Rule 15(c)(1)(C)." *Tate v. United States*, No. CV 15-9323-FMO (JPR), 2019 WL 6799107, at *4 (C.D. Cal. Sept. 18, 2019), *report and recommendation adopted*, 2019 WL 6790686 (C.D. Cal. Nov. 1, 2019); *see also Asher v. Unarco Material Handling, Inc.*, 596 F.3d 313, 318 (6th Cir. 2010) (finding that Rule 15(c)(1)(B) "allows relation back of an amendment asserting a 'claim or defense,' but it does not authorize the relation back of an amendment adding a new party"). Rule 15(c)(1)(C) includes three requirements for relation back to the date of the filing of the original complaint: "(1) the amended complaint arises out of the same occurrence set forth in the original complaint; (2) the added defendant received such notice of the institution of the action within the applicable statute of limitations so that he will not be prejudiced in maintaining his defense on the merits; and (3) the added defendant knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him." *Boyd v. Ill. State Police*, No. 98 C 8348, 2001 WL 726988, at *4 (N.D. Ill. June 28, 2001) (citing *Wood v. Worachek*, 618 F.2d 1225, 1229 (7th Cir. 1980)).[6]

---

[6] Some courts have held that the language in Rule 15(c)(1)(C) regarding an "amendment [that] changes the party or the naming of the party against whom a claim is asserted" imposes an additional requirement that the amendment must substitute or change a party, not merely add an additional party. *See Tate*, 2019 WL 6799107, at *4 ("Some courts have held that an amendment adding a party—as opposed to substituting or changing one—may relate back if Rule 15(c)(1)(C)

The Court informed Counterplaintiffs of its concern that the newly alleged IIED claim against Bornhorst might be barred by the statute of limitations, and gave them the opportunity to address those concerns orally at a telephonic status conference, and then again in writing following the conference. *See* [DE 107]. Yet Counterplaintiffs' Third Motion To Amend does not refer to either Rule 15(c)(1) or the statute of limitations, let alone discuss either with legal argument and citation to authority. At best, Counterplaintiffs vaguely suggest an argument for relation back under Rule 15(c)(1)(C) by referring to Bornhorst having actual notice of the allegations against him at the time this action was originally filed. But even if the Court assumes without deciding that the first and second requirements for relation back under Rule 15(c)(1)(C), that is, the requirements of a "same transaction or occurrence" and timely notice to the newly named defendant, are satisfied here, the third requirement that the newly named defendant "knew or should have known that the action would have been brought against [him], but for a mistake concerning the proper party's identity," Fed. R. Civ. P. 15(c)(1)(C)(ii), does not appear to be satisfied.

The third requirement does not concern solely what Bornhorst knew or should have known but also raises the question of whether the reason Bornhorst was not sued earlier was "a mistake concerning the identity of the proper party." *See Herrera v. Cleveland*, 8 F.4th 493, 496 (7th Cir. 2021). What constitutes a "mistake concerning the identity of the proper party" is a question of

---

is satisfied, while others have construed new-party amendments as never relating back." (citations omitted)). The Court will assume for present purposes that Rule 15(c)(1)(C) permits relation back where a new party is added, without substituting or changing an already named party. *See Miller*, 2018 WL 2197723, at *2 n.1 (noting that "most courts have adopted a liberal understanding of" the requirement in Rule 15(c)(1)(C) that the amendment changes the party or the naming of the party); *Brown v. SportsArt Am., Inc.,* No. 10 C 6818, 2012 WL 5304157, at *4 (N.D. Ill. Oct. 25, 2012) (finding that language of Seventh Circuit precedent supports applying Rule 15(c)(1)(C) when a plaintiff names an additional party).

law. *See Smith v. Zettergren*, No. 1:18-cv-1924, 2021 WL 4502175, at *6 (N.D. Ill. Sept. 30, 2021). Generally, "'[m]istakes' under Rule 15(c)(1)(C) fall into three broad categories": (1) misstating the proper defendant's name; (2) "fail[ing] to name the proper defendant or nam[ing] an incorrect defendant because the plaintiff does not know the correct defendant's identity"; and (3) "nam[ing] an incorrect [defendant] because of a mistake of law, 'such as when the underlying claim has not changed but the legally responsible institutional or individual party has been mistakenly identified.'" *Arp v. Ind. State Police*, No. 1:21-CV-02626-TWP-DLP, 2022 WL 3716526, at *5 (S.D. Ind. Aug. 29, 2022) (citations omitted)).

Counterplaintiffs contend that they omitted an IIED claim against Bornhorst in their original counterclaim because they did not know at the time that Old DirectBuy (or the New DirectBuy Entities in its place) would defend the IIED counterclaim as alleged against it by arguing that Old DirectBuy could not be held vicariously liable for Bornhorst's tort due to the fact that Bornhorst's actions were outside the scope of his employment. The only category of mistakes under which this explanation arguably might fall is the third type, where the plaintiff names an incorrect defendant because of a mistake of law. But the types of legal mistakes at issue in cases in this category are where the law provides for liability of only the institutional defendant or only the individual defendant, and the plaintiff sues the wrong one. *See, e.g., Jackson v. Kotter*, 541 F.3d 688, 693, 694-96 (7th Cir. 2009) (where the plaintiff's claim under the Federal Tort Claims Act ("FTCA") named the officials who engaged in the tortious conduct, relation back allowed as to the United States, which is "the only proper defendant in an FTCA action"); *Donald v. Cook Cnty. Sheriff's Dep't,* 95 F.3d 548, 557 (7th Cir. 1996) ("A legal mistake concerning whether to sue an institutional or individual defendant brings the amendment within the purview of Rule 15(c)[(1)(C)], and public officials are charged with the knowledge that they are the appropriate

targets of Section 1983 suits."); *Woods,* 996 F.2d at 883 (where the plaintiff made the mistake of

law of bringing his § 1983 suit against the immune institution); *Arp,* 2022 WL 3716526, at *6

(where the plaintiff brought his § 1983 claims against the Indiana State Police, which was entitled

to sovereign immunity, rather than the officials responsible for the allegedly unconstitutional

decision); *see also Porter Cnty. Sheriff Dept. v. Guzorek*, 862 N.E.2d 254, at 255 (Ind. 2007)

(discussing and applying federal cases in holding that suing a defendant accorded immunity under

the law, rather than the non-immune entity or official, constitutes a mistake for purposes of

Indiana's relation back rule).[7]

Here, Counterplaintiffs contend that they mistakenly believed Old DirectBuy could be held

jointly liable for Bornhorst's torts, not that they mistakenly believed their IIED cause of action

was properly brought *only* against Old DirectBuy. Thus, unlike in the above line of cases, no

mistake of law prevented Counterplaintiffs from suing Bornhorst *in addition to* his employer, Old

DirectBuy. Instead, this case is like *Drake v. United States*, No. 2:14-cv-386-JMS-DKL, 2016 WL

4088724 (S.D. Ind. Aug. 1, 2016), where the plaintiff brought a claim against the United States

pursuant to the FTCA, but did not seek to add a *Bivens* claim against the responsible officer until

after the statute of limitations had run. The court held that "[t]here was no mistake in the filing of

the original complaint" because the plaintiff "knew who [the individual officer] was all along, but

chose to pursue a claim against the [officer's employer,] the United States under the FTCA rather

---

[7] The Court has also considered whether relation back might be proper under Indiana law, pursuant
to Federal Rule 15(c)(1)(A). *See Butler v. Nat'l Comm. Renaissance of Cal.*, 766 F.3d 1191, 1201
(9th Cir. 2014) ("[B]ecause the limitations period derives from state law, Rule 15(c)(1) requires
[the Court] to consider both federal and state law and employ whichever affords the "more
permissive" relation back standard."). "Indiana's relation-back rule, Ind. Trial R. 15(C), 'is
materially identical to the federal rule,'" however, and therefore, "it provides no separate basis for
relation back of [Counterplaintiffs' IIED against Bornhorst]." *Hill v. Wingerd*, No. 2:21-cv-110-
JPH-DLP, 2022 WL 4292182, at *4 (S.D. Ind. Sept. 16, 2022) (quoting *Joseph*, 638 F.3d at 558).

than against [the officer individually]." *Id.* at \*4; *see also Tate,* 2019 WL 6799107, at \*6 ("[N]otice of Plaintiff's FTCA claims against the United States did not put [the individual defendant] on notice that Plaintiff could or would sue him under *Bivens*, which Plaintiff did only after the United States moved to dismiss the … negligence claims on the ground that they were barred by the FTCA's discretionary-function exception."); *Green v. United States*, No. 3:14-CV-119-NJR-DGW, 2017 WL 4277168, at \*4 (S.D. Ill. Sept. 25, 2017) ("This is not a case in which Defendants knew or should have known that this action would be brought against them. There was no mistake in the filing of Green's original complaint." (internal citation omitted)).

The allegedly new facts Counterplaintiffs learned in recent discovery go to whether they can succeed in holding Old DirectBuy vicariously liable for the torts of its employee; those facts do not go to whether Counterplaintiffs can hold Bornhorst liable for his own conduct. Thus, the reason cited by Counterplaintiffs for their delay in naming Bornhorst as a defendant demonstrate that they made a "deliberate choice" to sue one party over another while "fully understanding factual and legal differences" between them, a situation that the Supreme Court called "the antithesis of making a mistake concerning the proper party's identity." *Krupski v. Costa Crociere S.p.A.,* 560 U.S. 538, 549 (2010). If, instead of a deliberate choice, it is Counterplaintiffs' contention that they did not understand that they could assert a claim directly against Bornhorst based on his own tortious conduct, that misunderstanding is not the type of mistake of law covered by the relation back rule. *See Ousley*, 339 F.R.D. at 462 ("Rule 15(c)(1)(C) permits relation back only to correct a misnomer or misdescription of a proper party plaintiff already in court. A plaintiff may not use Rule 15(c)(1)(C) to circumvent the statute of limitations, add[ ] new parties [or] new claims." (internal quotation marks and citations omitted)); *cf. Cancer Found., Inc. v. Cerberus Cap. Mgmt., LP,* 559 F.3d 671, 674 (7th Cir. 2009) ("A plaintiff does not need to know that his

injury is actionable to trigger the statute of limitations—the focus is on the discovery of the harm itself, not the discovery of the elements that make up a claim.").

Rule 15(c)(1)(C) prevents a "windfall for a prospective defendant who understood, or should have understood, that he escaped suit during the limitations period only because the plaintiff misunderstood a crucial fact about his identity." *Id.* at 550. Here, Counterplaintiffs did not misunderstand any crucial fact about Bornhorst's identity; they obviously knew who he was and in fact named him as the tortfeasor in the original counterclaim. While Counterplaintiffs contend that Bornhorst had actual notice of the allegations against him, that knowledge is irrelevant to whether there is relation back where there was no mistake related to Bornhorst's identity that caused Counterplaintiffs not to name him in the original counterclaim.

### *(b)      Equitable Tolling or Estoppel*

"Without relation back, Counterplaintiffs can add a new defendant … if equitable tolling applies." *Hartsell v. Schaaf*, No. 3:20-CV-505-JD-MGG, 2021 WL 5711539, at *2 (N.D. Ind. Dec. 2, 2021). "Equitable tolling halts the limitations clock when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action." *Herrera*, 8 F4th at 499 (internal quotation marks and citation omitted). "The federal doctrine of equitable tolling provides that 'a person is not required to sue within the statutory period if he cannot in the circumstances reasonably be expected to do so.'" *Hartsell*, 2021 WL 5711539, at *3 (quoting *Heck v. Humphrey*, 997 F.2d 355, 357 (7th Cir. 1993)). "Equitable tolling is a rare remedy to be applied in unusual circumstances[.]" *Wallace v. Kato*, 549 U.S. 384, 396 (2007). "[T]he circumstances causing the litigant's delay must be 'both extraordinary and beyond its control.'" *Johnson,* 2022 WL 17337953, at *8 (quoting *Mayberry v. Dittmann*, 904 F.3d 525, 530 (7th Cir. 2018)). The facts newly learned in recent discovery, as previously discussed, did not prevent

Counterplaintiffs from originally suing Bornhorst, along with Old DirectBuy. *See, e.g., Williams*, 390 F.3d at 963 (mistakes of law, even if reasonable, are not a basis for equitable tolling). Moreover, it is not "extraordinary" to learn that Bornhorst might have been acting outside the scope of his employment when he allegedly sexually harassed Counterplaintiff Elona Pope.

Equitable estoppel is even more of a reach here. That doctrine "addresses conduct by the defendant that prevents the plaintiff from suing within the statutory period," such as "where the defendant has fraudulently concealed from the plaintiff the existence of a claim against the defendant." *Williams*, 390 F.3d at 959. Counterplaintiffs do not assert any facts that might suggest equitable estoppel would apply, and the Court cannot conceive of any. Accordingly, Counterplaintiffs cannot rely on the doctrines of equitable tolling or equitable estoppel to stop the running of the statute of limitations.

## CONCLUSION

For the foregoing reasons, the Court **STRIKES** the claims in the Second Amended Counterclaim [DE 100] against Michael Bornhorst. In addition, Counterplaintiffs' Motion For Leave To File Third Amended Counterclaim [**DE 108**] is **GRANTED IN PART**: Counterplaintiffs are **DIRECTED** to file a revised version of the proposed Third Amended Counterclaim [DE 108-1], which omits any claim(s) against Michael Bornhorst (i.e., Count IV of the proposed Third Amended Counterclaim). Counterplaintiffs shall file the revised Third Amended Counterclaim on or before **January 23, 2023**.

In addition, there is no indication on the Docket that Counterplaintiffs have served the New DirectBuy Entities with the Second Amended Counterclaim. The Federal Rules of Civil Procedure provide that "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice

against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m). Accordingly, the Court **EXTENDS** the deadline by which Counterplaintiffs must serve the New DirectBuy Entities to **February 20, 2023**.

ORDERED this 10th day of January 2023.

s/ Joshua P. Kolar
MAGISTRATE JUDGE JOSHUA P. KOLAR
UNITED STATES DISTRICT COURT