UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| BUY DIRECT, LLC, TOM POPE, and ELONA POPE,<br>　　　　Counterclaimants,<br><br>　　　v.<br><br>DIRECTBUY, INC., CSC GENERATION, INC., DIRECTBUY HOME IMPROVEMENT, INC., and DIRECTBUY OPERATIONS, LLC,<br>　　　　Counterclaim Defendants. | CAUSE NO.: 2:15-CV-344-JVB-JEM |

## OPINION AND ORDER

This matter is before the Court on Counterdefendants' Motion to Dismiss Counterplaintiffs' Revised Third Amended Counterclaim [DE 121] filed on April 4, 2023, by Counterclaim Defendants CSC Generation, INC., Direct Buy Home Improvement, Inc., and DirectBuy Operations, LLC (collectively, "New DirectBuy").[1] Counterclaimants Buy Direct, LLC, Elona Pope, and Tom Pope (collectively, "Buy Direct") responded on May 25, 2023. New DirectBuy replied on June 13, 2023.

## BACKGROUND

This case is pending on Buy Direct's Revised Third Amended Counterclaim, filed on January 23, 2023. In that pleading, Buy Direct brings four counts: breach of contract, promissory estoppel, intentional infliction of emotional distress, and defamation.[2]

---

[1] The automatic bankruptcy stay issued as to Counterclaim Defendant DirectBuy Home Improvement, Inc., has been vacated by the United States Bankruptcy Court for the District of New Jersey solely to permit the Court to decide the instant motion to dismiss. *See* (Notice, ECF No. 137).

[2] Buy Direct also lists successor liability as a count, but successor liability is a theory of recovery for holding New DirectBuy liable for the actions of DirectBuy, Inc. ("Old DirectBuy") and is not a standalone cause of action. *See Ziese & Sons Excavating, Inc. v. Boyer Const. Corp.*, 965 N.E.2d 713, 721-22 (Ind. Ct. App. 2012) ("Ziese referenced successor liability and confirmed its reliance on that theory of recovery when asked by the trial court.")

The plaintiff, DirectBuy, Inc. ("Old DirectBuy"), whose own claims have been resolved and against whom no claims remain pending, entered into a Franchise Agreement and Asset Purchase Agreement with Buy Direct in 2014. Old DirectBuy initiated this lawsuit in 2015, and Buy Direct filed the first iteration of its counterclaim against Old DirectBuy the same year.

In November 2016, Old DirectBuy filed a Chapter 11 bankruptcy petition. The instant case was stayed while the bankruptcy case proceeded as case number 16-12435 in the District of Delaware's Bankruptcy Court. That case was closed on January 12, 2018. Here in the Northern District of Indiana, the Court lifted the stay in February 2019, noting representations by Old DirectBuy's former counsel that there were insufficient financial resources to reorganize Old DirectBuy after sale of its assets, that the bankruptcy proceedings were dismissed without distribution to unsecured creditors, and that the Indiana Secretary of State dissolved Old DirectBuy.

Many, but not all, of Old DirectBuy's assets were sold to CSC Generation, Inc. *See* (Sale Order ¶ U, ECF No. 122-5 ("Pursuant to the Purchase Agreement, the Purchaser is not purchasing all of the Debtors' assets in that the Purchaser is not purchasing any of the Excluded Assets or assuming the Excluded Liabilities.")). CSC Generation, Inc. subsequently changed its name to DirectBuy Home Improvement, Inc. Buy Direct sought and received permission to amend its counterclaim to bring counterclaims against New DirectBuy under a theory of successor liability. The Court dismissed the claims brought by Old DirectBuy on January 10, 2023.

**MOTION TO DISMISS STANDARD**

Federal Rule of Civil Procedure 12(b)(1) requires a court to dismiss a cause of action when the court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "When ruling on a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the

district court must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff." *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995). However, when subject matter jurisdiction is not apparent on the face of the complaint and is contested, the district court may "properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Evers v. Astrue*, 536 F.3d 651, 656-57 (7th Cir. 2008). "In all cases, the party asserting federal jurisdiction has the burden of proof to show that jurisdiction is proper." *Travelers Prop. Cas. v. Good*, 689 F.3d 714, 722 (7th Cir. 2012) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 289 U.S. 178, 198 (1936)).

The purpose of a motion to dismiss under Rule 12(b)(6) for failure to state a claim is to test the sufficiency of the pleading, not to decide the merits of the case. *See Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). Federal Rule of Civil Procedure Rule 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." However, "recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 661, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). As the Supreme Court has stated, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id*. Rather, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). A complaint is facially plausible if a court can reasonably infer from factual content in the pleading that the defendant is liable for the alleged wrongdoing. *Id*. (citing *Twombly*, 550 U.S. at 570).

The standard has three requirements. "First, a plaintiff must provide notice to defendants of her claims. Second, courts must accept a plaintiff's factual allegations as true, but some factual

allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim. Third, in considering the plaintiff's factual allegations, courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

## ANALYSIS

New DirectBuy argues that the Revised Third Amended Counterclaim should be dismissed because the United States Bankruptcy Court for the District of Delaware has exclusive jurisdiction to decide matters that hinge on the interpretation and enforcement of its prior sale order. New DirectBuy also contends that dismissal is appropriate because, under Texas law, no successor liability theory can succeed. Finally, New DirectBuy asserts that, even if New York or Indiana law applies, the plain language of the sale order and § 363 of the bankruptcy code establish that New DirectBuy cannot be held liable on successor liability theories for the conduct alleged in the counterclaim.

### A. Jurisdiction

New DirectBuy contends that the Court lacks jurisdiction to hear this dispute. The Court must determine whether it has jurisdiction before it can address the merits of the counterclaims. New DirectBuy identifies that the Bankruptcy Court's Sale Order provides that the Bankruptcy Court "shall retain exclusive jurisdiction to enforce and implement the terms and provisions of the Purchase Agreement, . . . including . . . retaining jurisdiction to . . . (c) resolve any disputes arising under or related to the Purchase Agreement, (d) interpret, implement, and enforce the provisions of this Order, and (e) address . . . any claims of successor or vicarious liability related to the Purchased Assets or Contracts." (Sale Order ¶ 44, ECF No. 122-5). Buy Direct does not say much

4

on the topic but asserts that the Court "has the authority to independently consider the legal effect of another Court's order." (Resp. at 12, ECF No. 129).[3]

Despite the apparent conferral of exclusive jurisdiction, it is the Constitution and Congress, not the courts, that determine the scope of jurisdiction of the federal courts. *See Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). Congress, through 28 U.S.C. § 1334(b), has conferred "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11" on "the district courts." That is, even state courts could have jurisdiction to hear these claims because the federal district courts' jurisdiction is not exclusive. The exclusive jurisdiction of district courts "is limited to (1) the Debtor's Chapter 11 petition and 'the proceedings that follow the filing of a bankruptcy petition,'" under 28 U.S.C. § 1334(a) and (2) "the debtor's property at the commencement of a Chapter 11 case 'and of property of the estate' . . . so long as property is part of the bankruptcy estate" under 28 U.S.C. § 1334(e)(1). *In re Skyline Woods Country Club*, 636 F.3d 467, 471 (8th Cir. 2011) (quoting *In re Middlesex Power Equip. & Marine, Inc.*, 292 F.3d 61, 66 (1st Cir. 2002); *Valley Historic Ltd. P'ship v. Bank of New York*, 486 F.3d 831, 837-38 (4th Cir. 2007)). Under 28 U.S.C. § 157, district courts may refer title 11 cases and "core proceedings arising under title 11" to the districts' bankruptcy judges.

It is not within a bankruptcy court's power to grant itself exclusive jurisdiction over all disputes related to the purchase agreement or the interpretation of its sale order. *See In re Old Carco LLC*, 636 B.R. 347, 356 n.3 (Bankr. S.D.N.Y. 2022) ("[A] court order can neither confer jurisdiction on a court that is not provided by statute, nor can it strip another court of jurisdiction provided by applicable law."). Further, *Stern v. Marshall*, 564 U.S. 462, 487 (2011), casts doubt

---

[3] The Court uses the pagination in the CM/ECF header.

on whether the bankruptcy court would have the authority to enter a final judgment on the state court claims raised in the Revised Third Amended Counterclaim, as they may not be "core proceedings" per § 157.

As a result, the Court finds that it has jurisdiction to hear this matter, as the bankruptcy court lacks authority to deem itself the only court with jurisdiction over the interpretation of the Sale Order and Purchase Agreement. Additionally, as the Courts discussion of the merits will show, only a surface-level reading of these documents is needed, with no in-depth analysis required.

### B. Choice of Law

The parties dispute which state's law should be applied to determine whether New DirectBuy can be held liable for the counterclaims brought against it under the theory of successor liability. Buy Direct argues that Indiana law should apply, and New DirectBuy contends that Texas law should apply. When the Court hears claims under diversity jurisdiction, which is the case here, it applies the choice of law principles of Indiana, since the Court is geographically located in the state of Indiana. *See W. Bent Mut. Ins. v. Arbor Homes LLC*, 703 F.3d 1092, 1095 (7th Cir. 2013).

The Court need not resolve the question of which state's substantive law to apply to claims unless there is "a conflict between state laws important enough to affect the outcome of the litigation." *Litsinger v. Forest River, Inc.*, 536 F. Supp. 3d 334, 357 (N.D. Ind. 2021) (quoting *Simon v. United States*, 805 N.E.2d 798, 805 (Ind. 2004) (internal quotation marks omitted)); *see also Tricor Auto. Grp. v. Dealer VSC Ltd.*, 219 N.E.3d 206, 216 n.7 (Ind. Ct. App. 2023) (stating that if there is no germane conflict of laws, then the law of the forum state should be applied).

When facing a conflict of laws, Indiana courts do not analyze different *issues* within the same claim separately to potentially apply different states' laws to the various issues raised in a single claim. *Simon v. United States*, 805 N.E.2d 798, 801 (Ind. 2004). However, Indiana courts

will analyze each *claim* brought in a lawsuit separately. *Id.* So, Indiana courts would look at each count of the pending counterclaim individually to determine what law should apply, but Indiana courts would not separately analyze the successor liability issue within each claim. Accordingly, the Court will take up each claim—as a whole—in turn.

"Generally, Indiana courts will give effect to the parties' agreement as to controlling law." *Brill v. Regent Commc'ns, Inc.*, 12 N.E.3d 299, 306 (Ind. Ct. App. 2014) (citations omitted). Thus, the first step is to determine whether there is an agreement regarding the choice of law. If there is none, then Indiana courts apply the appropriate rule to the claim. For contract claims, the rule is to apply the substantive laws of the state that has the "most intimate contacts" with the claim. *Nat'l Union Fire Ins. of Pittsburgh, PA v. Standard Fusee Corp.*, 940 N.E.2d 810, 814 (Ind. 2010). For tort claims, the presumption is for Indiana courts apply the substantive laws of the state "where the last event necessary to make an actor liable for the alleged wrong takes place," *Hubbard Mfg. Co. v. Greeson*, 515 N.E.2d 1071, 1073 (Ind. 1987), unless the place of the tort bears little connection to the legal action at issue. *Simon*, 805 N.E.2d at 805.

1.   Existence of Conflict of Laws

New DirectBuy advocates for the application of Texas law to all of the claims, while Buy Direct asserts that Indiana law should apply. Both parties mention New York law, but no party argues that the Court should apply it to this case.[4] The laws of Texas and Indiana conflict regarding successor liability, and this conflict pertains to all four claims in the operative pleading.

If Texas law applies, then there is no successor liability absent an express assumption of the liabilities in the purchase agreement. Section 10.254(b) of the Texas Business Organizations Code provides: "Except as otherwise expressly provided by another statute, a person acquiring

---

[4] Buy Direct states that New York law should not be applied because it does not meaningfully conflict with Indiana law. New DirectBuy agrees that Indiana law and New York law are in harmony regarding successor liability.

property described by this section may not be held responsible or liable for a liability or obligation of the transferring domestic entity that is not expressly assumed by the person." *See also UST-Mamiya, Inc. v. True Sports, Inc.*, 441 F. Supp. 3d 382, 394 (N.D. Tex. 2020) ("Texas law does not generally recognize successor liability for subsequent purchases of corporate assets." (citation omitted)). The Tenth Circuit noted that express assumption of liability is the only exception Texas recognizes to the general rule against successor liability. *Lopez v. Stanley Black & Decker, Inc.*, 764 F. App'x 703, 709 (10th Cir. 2019).

Buy Direct does not contest New DirectBuy's assertion that, if Texas law applies, then Buy Direct's counterclaims fail because New DirectBuy did not expressly assume liabilities regarding the claims Buy Direct brings in the Revised Third Amended Counterclaim.

If Indiana law applies, then there is no successor liability unless one of four exceptions is met:

- the buyer agrees (expressly or impliedly) to assume the seller's liabilities;
- the asset purchase is fraudulent, allowing the seller to evade liability;
- the purchase is a de facto merger or consolidation; or
- the buyer is a mere continuation of the seller.

*New Nello Operating Co., LLC v. CompressAir*, 168 N.E.3d 238, 241 (Ind. 2021). Buy Direct argues that the fraud exception applies here. New DirectBuy, however, argues that even if Indiana law applies there is still no successor liability because no exception applies. The Court finds that the laws of Texas regarding successor liability, as applied here, conflict with the laws of Indiana on the same subject, so the Court must determine which laws an Indiana state court would apply in deciding each claim.

2.     Breach of Contract Claim

Buy Direct alleges that Old DirectBuy breached two agreements: the Franchise Agreement and an agreement to reimburse expenses incurred in moving goods at Old DirectBuy's direction.

"Generally, Indiana courts will give effect to the parties' agreement as to controlling law." *Brill v. Regent Commc'ns, Inc.*, 12 N.E.3d 299, 306 (Ind. Ct. App. 2014) (citations omitted). Accordingly, the Court must determine whether there is an agreement to apply a particular state's law to the disputes. New DirectBuy contends that there is no agreement, and Buy Direct argues that there is an agreement to apply Indiana law.

The purported agreement to apply Indiana law is found in the Franchise Agreement between Old DirectBuy and Buy Direct and is attached to the original complaint filed by Old DirectBuy and referenced in paragraph 17 of the Revised Third Amended Counterclaim. New DirectBuy asserts that the Court cannot consider the document because it was not attached as an exhibit to the Revised Third Amended Counterclaim, but cites no law in support of this argument. The Court finds that it can consider the Franchise Agreement because it was referenced in the operative pleading and Buy Direct, in that pleading, also identified where it could be found on the docket. That it was identified as "appended to Plaintiff's Complaint (DE 1)" instead of "appended here as Exhibit X" (and then duly attached) is a distinction without a difference. Further, Old DirectBuy does not argue that the document identified as the Franchise Agreement is not, in fact, what it purports to be.

The Franchise Agreement is between Old DirectBuy and Buy Direct, LLC. (Compl. Ex. 1 at 1, ECF No. 1-1). Section 18.01 of the agreement provides, "This Agreement and all issues arising from or relating to this Agreement or the relationship of the parties shall be governed by and construed under the internal laws of the State of Indiana without regard to Indiana conflict of law principles" subject to an exception for state law about franchise practices that no party argues applies. *Id.* § 18.01. Section 18.09 provides, "This Agreement is binding on the parties hereto and their respective . . . successors in interest." *Id.* § 18.09.

9

Even so, New DirectBuy identifies that the Franchise Agreement was not one of the assets it purchased, so it is therefore not a successor in interest to the Franchise Agreement. The Asset Purchase Agreement between CSC Generation, Inc. and Old DirectBuy lists the "Assumed Contracts" that were part of the sale of Old DirectBuy to New DirectBuy. (Mot. Ex. D. Asset Purchase Agreement Sch. 2.1(*l*), ECF No. 122-4). Under the agreement, all contracts not assumed in the agreement "remain the exclusive property of the Sellers." *Id.* § 2.2(a). Accordingly, New DirectBuy is not Old DirectBuy's successor in interest as to the Franchise Agreement, so the agreement to apply Indiana's substantive law is not binding on New DirectBuy.[5]

Consequently, the Court must determine which state has the "most intimate contacts" with the contract dispute, as Indiana follows the Restatement (Second) of Conflict of Laws. *Stonington Ins. v. Williams*, 922 N.E.2d 660, 665 (Ind. Ct. App. 2010). Five factors inform this analysis: "(1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties." *Nat'l Union Fire Ins. of Pittsburgh, PA v. Standard Fusee Corp.*, 940 N.E.2d 810, 814 (Ind. 2010). The factors "are to be evaluated according to their relative importance with respect to the particular issue." Restatement (Second) of Conflict of Laws § 188(2) (1971).

Regarding the Franchise Agreement, the places of negotiation and contracting are unknown, other than one schedule being notarized in Texas, *see* (Compl. Ex. A at 47, ECF No. 1-1), so the first two factors are fairly neutral with a slight lean toward Texas. The place of performance and the location of the subject matter of the contract are in Texas. The Popes are

---

[5] The Court declines Buy Direct's invitation to follow the Sixth Circuit's decision (with no precedential authority over this Court), which Buy Direct asserts applied a contractual choice of law provision to a non-party. *See Johnson v. Ventra Group, Inc.*, 191 F.3d 732 (6th Cir. 1999).

Texas citizens, and Old DirectBuy was an Indiana citizen. While there are some contacts with Indiana, when looking at the factors all together Texas is the state with the most intimate contacts to the Franchise Agreement dispute.

As to the dispute over an agreement to reimburse moving expenses, the places of negotiation and contracting are unknown, so these factors are neutral. The place of performance and location of the subject matter were in Texas, and the parties' citizenships are split between Texas and Indiana. The location of the items being moved and the incurrence of moving expenses in Texas have the highest relative importance to this issue. Texas has the motion intimate contacts to this dispute.

The Court will apply Texas law to the breach of contract claims because that is the law that an Indiana state court would apply.

    3.    <u>Promissory Estoppel Claims</u>

Though listed as a single count in the counterclaim, there are two promises that Buy Direct alleges it relied on. The gist of the first promissory estoppel claim is that Buy Direct relied on the promises of Old DirectBuy's CEO that, as a club selected for mandatory participation in a subscription-based pilot program, Buy Direct would be "safe" from being assessed penalties or other punitive actions under the Franchise Agreement. The second promissory estoppel claim concerns the reliance on a promise that expenses connected to Buy Direct's relocation (undertaken at Old DirectBuy's direction) would be reimbursed.

At surface level, the Franchise Agreement's choice of law provision described above covers both promissory estoppel allegations because, at a minimum, the issues arise from or relate to the parties' relationship. And, as before, New DirectBuy is neither a party nor a successor in interest to the Franchise Agreement, so New DirectBuy did not agree to the choice of law provision

11

in that agreement. The Court must apply the "most intimate contacts" test that Indiana courts would apply in these circumstances.

For the pilot program dispute, the places of negotiation and contracting are once again unknown. The place of performance and the location of the subject matter was Texas. The parties' citizenship is split between Texas and Indiana. The alleged promise related to the running of the franchise in Texas, and the Court finds that the location of the subject franchise business in Texas has the highest relative importance. Texas has the most intimate contacts to this dispute.

As for the moving expenses, the Court has already found that Texas has the most intimate contacts to this dispute. It makes no difference whether the claim is formally brought as a breach of contract claim or a promissory estoppel claim.

The Court will apply the state law of Texas to the promissory estoppel claims.

### 4.    Intentional Infliction of Emotional Distress Claim

The allegations supporting the claim for intentional infliction of emotional distress (IIED) are that Old DirectBuy CEO Michael Bornhorst engaged in extreme and outrageous conduct in the form of unwelcome sexual advances and sexual harassment of Elona Pope. The Counterclaim makes clear that this count is brought by Elona Pope. *See* (Rev. 3d Am. Counterclaim at 25, ECF No. 112 ("*WHEREFORE*, Counterplaintiff, Elona Pope prays that judgment be granted in her favor." (emphasis in original)).

Elona Pope is neither a party to the Franchise Agreement nor has she been shown to be a successor of a party to that agreement. This claim is neither arising out of or relating to the Franchise Agreement nor arising out of or relating to the relationship of the parties to that agreement. It is also not established that Elona Pope could be held to the choice of law agreement

that she was not a party to. Accordingly, the Court applies Indiana's choice of law analysis for tort claims to the IIED claim.

Indiana applies the substantive law of the place where the tort was committed unless that place "bears little connection to the legal action," in which case other factors may be considered. *Hubbard Mfg. Co.*, 515 N.E.2d at 1073-74. The alleged behavior giving rise to the IIED claim happened from June 7-9, 2015, at a DirectBuy conference in Dallas, Texas. Thus, the alleged tort occurred in Texas, and given that the Popes live in Texas and their franchise was located in Texas, that state bears more than a little connection to this legal action, so the Court applies Texas law to this claim.

### 5. Defamation Claim

The relevant allegations in the Revised Third Amended Counterclaim are that at a meeting held in The Woodlands, Texas, an authorized representative of Old DirectBuy stated to Houston, Texas, Buy Direct Members that Tom and Elona Pope "had broken some Federal laws" and that the Popes were harmed by this defamatory statement. (Rev. 3d Am. Countercl. ¶¶ 142-55, ECF No. 112).

Because neither of the Popes are parties to the Franchise Agreement or successors to parties to that agreement, the Franchise Agreement's choice of law provision does not apply to this tort claim. The place of this alleged tort is Texas, which as discussed above has enough connection to this legal action for Indiana courts to apply Texas law to this claim.

### C. Successor Liability Under Texas Law

Having determined that Texas law applies to each of the claims in the revised third amended counterclaim, the Court now turns to whether, for these claims, there is successor liability.

"Except as otherwise expressly provided by another statute, a person acquiring property [by disposition of property not via merger or conversion] may not be held responsible or liable for a liability or obligation of the transferring domestic entity that is not expressly assumed by the person." Tex. Bus. Orgs. Code Ann. § 10.254. That is, Texas recognizes successor liability only where the liabilities are expressly assumed in the purchase agreement or liability is conferred by statute. *In re 1701 Com, LLC*, 511 B.R. 812, 824 (Bankr. N.D. Tex. 2014); *see also E-Quest Mgmt., LLC v. Shaw*, 433 S.W.3d 18, 24 (Tex. App. 2013) ("Thus, in Texas, there is no successor in interest when an acquiring corporation does not expressly agree to assume the liabilities of the other party to an agreement . . . .").

Buy Direct can succeed through successor liability for its breach of contract and promissory estoppel claims only if liability was expressly assumed in the purchase agreement or if liability is conferred by statute. Buy Direct has not identified, nor has the Court independently found, any express assumption of these liabilities or statutory conferral of liability. New DirectBuy does not bear successor liability for these claims.

Elona Pope presents no argument that, under Texas law, her IIED claim survives New DirectBuy's challenge to successor liability. There is nothing to suggest that New DirectBuy expressly assumed liability for the alleged IIED against Elona Pope. Thus, the Court finds that New DirectBuy cannot be held liable for this tort, allegedly committed by Old DirectBuy.

Similarly, the Popes have not argued that, under Texas law, New DirectBuy can be held liable for Old DirectBuy's alleged defamation. There is no indication that New DirectBuy expressly assumed liability for this claim or that liability for the claim is conferred by statute. Under Texas law, there is no successor liability under the circumstances presented. The Court dismisses the tort claims for IIED and defamation.

## CONCLUSION

Based on the above, the Court hereby **GRANTS** on Counterdefendants' Motion to Dismiss Counterplaintiffs' Revised Third Amended Counterclaim [DE 121] and **DISMISSES with prejudice** the Revised Third Amended Counterclaim.

SO ORDERED on September 6, 2024.

s/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN, JUDGE
UNITED STATES DISTRICT COURT
